GOLDEN RULE INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. MARK SCHWARTZ, Defendant and Counterplaintiff-Appellee and Cross-Appellant.

First District (3rd Division)   No. 1—00—0889

Opinion filed May 30, 2001.—Rehearing denied July 19, 2001.

88

Erik D. Gruber, of William J. Harte, Ltd., of Chicago, and David A. Anderson, of Anderson & Associates, P.C., of Indianapolis, Indiana, for appellant.

Warren Lupel and Deane B. Brown, both of Katz Randall Weinberg & Richmond, of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

The first question we must answer is metaphysical in nature but of practical importance to the parties in this medical insurance coverage dispute: Can someone be held responsible for making a misrepresentation if he does not know his words are untrue? We are required by prior decisions to say the answer is yes in this case.

## BACKGROUND

Golden Rule Insurance Company (Golden Rule) filed this declaratory judgment action in Lawrence County in July 1985, alleging it was entitled to rescind the health insurance policy it issued to Mark Schwartz (Mark). Mark filed a counterclaim.

The case was transferred to Cook County in 1997. The trial court granted summary judgment in favor of Mark on the declaratory judgment action and on count I of his counterclaim, in which Mark alleged Golden Rule was not entitled to offset damages with medical payments made by other insurance companies.

The trial court later found Mark was entitled to sanctions under

section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 1998)) and granted his summary judgment motion on this issue. However, the trial court ruled Schwartz was not entitled to *pro se* attorney fees under section 155.

At the same time, the trial court found Mark was entitled to recover the premiums he paid for comparable replacement coverage, but was not entitled to 9% prejudgment interest on his damages pursuant to section 357.9 of the Code. The trial court granted summary judgment in favor of Golden Rule on the section 357.9 prejudgment interest issue.

What is referred to by the parties as a "bench trial" was held to determine damages, though it does not appear from the record that any of the formalities generally associated with a trial were followed. Judgment was entered in favor of Mark in the amount of $447,074. The award was broken down as follows:

(a) Covered medical expenses incurred as of October 1, 1999:   $254,285.66
(b) Interest on said medical expenses:   $ 90,801.32
(c) Section 155 penalty:   $ 25,000.00
(d) Net premiums owed for replacement coverage:   $ 65,994.00
(e) Interest on said premiums to November 3, 1999:   $ 11,093.00.

Though the parties raised the issue of attorney fees, the trial court reserved ruling pending this appeal. The trial court included Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language in the order, making it immediately appealable.

Golden Rule appeals both the trial court's decision granting Mark summary judgment and its award of damages, contending: (1) Golden Rule was entitled to rescind the policy due to material misrepresentations made by Mark in his application for insurance; (2) Golden Rule was entitled to rescind the policy because Mark did not sign the application as required by the Illinois Insurance Code; (3) section 155 sanctions should not have been awarded; (4) even if Mark was entitled to section 155 sanctions, the trial court did not calculate the sanctions properly; (5) the trial court incorrectly assessed the insurance premiums awarded as part of Mark's damages.

Mark filed a cross-appeal, contending the trial court erred in finding he was not entitled to prejudgment interest under section 357.9 of the Code. Mark also contends the trial court erred in refusing to award him *pro se* attorney fees as sanctions under section 155 of the Code.

We reverse in Golden Rule's appeal and remand for further proceedings, and affirm in Mark's appeal.

## FACTS

In spring of 1985, Mark was a 23-year-old full-time medical

student. When his father, Spencer Schwartz (Spencer), realized his family's health insurance policy was going to lapse, he asked his insurance broker about new coverage. The broker, Myron Scharff (Scharff), sent Spencer separate Golden Rule applications for Mark and for the rest of Spencer's family. Scharff told Spencer his son would have to be covered under a separate Golden Rule policy because he was too old to be covered as a dependent under a family policy.

Spencer filled out the applications and sent them back to Scharff signed. The insurance company returned the applications because they were mailed too long after they had been completed. Scharff contacted Spencer and told him new applications would have to be submitted. Scharff filled out the new applications while Spencer answered the questions via telephone. One of the questions asked, "Are any persons named *** covered by *** any type of Life, Disability or Medical Insurance?" Spencer answered no on both his application and the application for Mark. The application explained the effect of other insurance plans on the Golden Rule policy:

> "This policy will not be issued as a supplement to other health plans that you may have at the time of application. Medical payment provisions under liability policies and small cancer only policies do not affect our underwriting. A misstatement in the application about other medical insurance may cause us to void the policy. If, after the policy is issued, you are covered by other plans, the benefits paid under these other plans may be used to help satisfy the deductible and 20% coinsurance. *** Other plans are all policies and plans that provide benefits for hospital, surgical, or medical expenses, including individual and family policies, group programs, union programs, automobile medical payments insurance, Medicare and others."

Spencer authorized Scharff to sign the applications. The application includes the following statement just above the signature line:

> "I represent that the statements and answers in this application are true and complete to the best of my knowledge and belief. I agree that *** the statements and answers given in this application and any amendments to it will form the basis of any insurance issued."

Scharff signed Spencer's name on the family application and signed Mark's name on his application.

Golden Rule issued health insurance policies to Spencer and Mark in March 1985. A few weeks later, Mark was on vacation in New York when he was in an auto accident. He was seriously injured and was hospitalized for over a month.

When Spencer began to look at Mark's insurance policies, he realized Mark was covered not only by the new Golden Rule policy, but

also was an "eligible dependent" under a policy Spencer held with Mutual of Omaha. The Mutual of Omaha policy was a group policy held through the American Bar Endowment (ABE). The ABE policy was issued to Spencer in 1973. The policy was an excess major medical insurance policy, with a deductible of $10,000. It covered eligible dependents up to age 19, unless they were full-time students. If dependents were full-time students, they were covered until they were 25 years old.

Spencer submitted claims on his son's behalf to both Mutual of Omaha and Golden Rule. Golden Rule denied coverage and rescinded the policy. Soon after, it filed this declaratory judgment suit, alleging Mark's failure to disclose the Mutual of Omaha policy was a material misrepresentation justifying rescission of the policy.

Mutual of Omaha paid Mark's medical expenses until his coverage under that policy lapsed. Under New York law, Mark was entitled to payment from Home Insurance, a no-fault carrier. Mark was also covered by an "Auto Med Pay" provision in Spencer's auto insurance policy, issued by Travelers Insurance. Mark is currently covered under a Blue Cross/Blue Shield policy. At the time of the bench trial, the insurance carriers had provided coverage as follows:

| Mutual of Omaha: | $118,592.73 |
|---|---|
| Blue Cross/Blue Shield: | $105,898.76 |
| Home Insurance: | $ 50,000.00 |
| Travelers Insurance: | $ 10,000.00 |
| Total: | $284,491.49. |

Mark has several "back-up" health insurance policies that he will use if Blue Cross/Blue Shield cancels his plan. Most of these "back-up" policies were paid by an employer.

Spencer's Golden Rule policy never was rescinded, though he did not disclose the Mutual of Omaha policy in his application.

Mark continues to have medical problems caused by the injuries sustained in the auto accident.

## DECISION

### Summary Judgment

Golden Rule contends the trial court erred in granting summary judgment in Mark's favor on the substantive issues, as well as on the issues relating to sanctions and Golden Rule's ability to offset damages.

•1 Review of the trial court's ruling on a motion for summary judgment is *de novo. Lajato v. AT&T, Inc.*, 283 Ill. App. 3d 126, 135,

669 N.E.2d 645 (1996). Summary judgment is proper when the pleadings, depositions, and affidavits on file, construed in the light most favorable to the nonmoving party, establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lajato*, 283 Ill. App. 3d at 135. The purpose of the summary judgment procedure is not to decide the facts but to ascertain whether a factual dispute exists. *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1070-71, 603 N.E.2d 1215 (1992).

## Material Misrepresentation

Golden Rule contends the trial court erred in finding Mark did not make a material misrepresentation when he failed to disclose the Mutual of Omaha policy on his application. Mark contends his answer does not constitute a "misrepresentation" because he and his father did not realize he was covered by the Mutual of Omaha policy. According to Mark, a statement should not be interpreted as a "misrepresentation" unless it was known to be untrue at the time that it was made.

●2 Section 154 of the Code says:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance *** shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154 (West 1998).

●3 "A 'misrepresentation' in an application for insurance is a statement of something as a fact which is untrue and affects the risk undertaken by the insurer." *Ratcliffe v. International Surplus Lines Insurance Co.*, 194 Ill. App. 3d 18, 25, 550 N.E.2d 1052 (1990). If a misrepresentation is material, it will avoid the contract even if it was made in good faith, without the intent to deceive. *Campbell v. Prudential Insurance Co.*, 15 Ill. 2d 308, 313, 155 N.E.2d 9 (1958).

Here, it is undisputed that the Mutual of Omaha policy was in effect when Spencer filled out the application for the Golden Rule policy on behalf of Mark. During their depositions, both Mark and Spencer testified they did not realize Mark would be covered under this policy. Spencer said:

"All I know is Mark didn't have any life insurance then, except dependent coverage, perhaps. He didn't have any—I didn't even know he was covered with major medical. I thought that that had lapsed

on him, too. It turned out he was covered. I thought that lapsed when he was 23. I found out later he was covered. I was surprised at that."

And:

"At the time the application was completed by me, it was made out truthfully and accurately to the best of my knowledge at that time.

I did not know he had major medical coverage at that time. He certainly didn't have any life insurance coverage, that I was aware of, independently, perhaps as a dependent, if he was, in fact, a dependent.

And I understand the cut off, in some policies, is 23, some 24, some 21, some depending whether you are in school or out of school. Each policy, I know, is different.

But it was my understanding that since he had to get his own individual policy, according to Mike, I assumed he had no other coverage at all. This was going to be his only coverage."

Mark testified that he wasn't aware he was covered under his father's Mutual of Omaha policy because he didn't usually handle applying for his health insurance policies. Mark said his father had always obtained coverage for him and that Spencer was "absolutely" authorized to act on his behalf.

•4 The threshold question is whether there can be a material misrepresentation within the meaning of section 154 when the applicant believes his statement to the insurance company is true. Our review of pertinent supreme court decisions leads us to conclude a misrepresentation made in good faith or resulting from a mistake of the applicant is enough to avoid the contract if it was material to the risk assumed by the insurance company. *Campbell*, 15 Ill. 2d at 313.

In *Campbell*, the Illinois Supreme Court interpreted the language of section 154 of the Code:

Section 154 *** provides in part that 'No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive *or* materially affects either the acceptance of the risk or the hazard assumed by the company.' [Citation.] The plaintiff contends that the italicized word 'or' should be read 'and,' so that the defendant must show both the materiality of the misrepresentation and an actual intent to deceive if it is to avoid liability. The defendant contends that its burden is satisfied if it establishes either a material misrepresentation or an intent to deceive.

***

On occasion the disjunctive 'or' has been read as the conjunctive 'and.' [Citations.] Such a construction, however, is permissible only when a literal reading is inconsistent with an apparent legislative purpose. ***

***

*** We see no reason why section 154 should not be read as it is written, in the disjunctive." (Emphasis in original.) *Campbell*, 15 Ill. 2d at 310-13.

The *Campbell* decision cites an earlier Illinois Supreme Court case, *Weinstein v. Metropolitan Life Insurance Co.*, 389 Ill. 571, 60 N.E.2d 207 (1945). In *Weinstein*, a life insurance case, the supreme court interpreted a "misrepresentation" in an application for insurance as:

> "[A] statement of something as a fact which is untrue and material to the risk, and which the insured states, knowing it to be untrue, in an attempt to deceive, or which he states positively is true without knowing it to be true and which has a tendency to mislead. [Citations.] Misrepresentations will avoid a policy of life insurance if they are, in fact, false and material to the risk, even though the applicant acted through mistake or in good faith." *Weinstein*, 389 Ill. at 577.

The appellate court follows these early supreme court decisions. See *Ratcliffe*, 194 Ill. App. 3d at 25 ("A material misrepresentation will avoid the contract even though made through mistake or good faith. [Citations.] *** [I]t is unnecessary for the insurer to prove that a misrepresentation was made with the intent to deceive if it was material to the risk assumed"); *Cohen v. Washington National Insurance Co.*, 175 Ill. App. 3d 517, 520, 529 N.E.2d 1065 (1988) ("A material misrepresentation will avoid the contract even though made through mistake or good faith"); *Garde v. Country Life Insurance Co.*, 147 Ill. App. 3d 1023, 1031, 498 N.E.2d 94 (1986) ("A good-faith mistake does not change the nature of the misrepresentation").

Mark contends this result is too harsh and claims several appellate court decisions find a statement does not constitute a misrepresentation unless it was made in bad faith. See *Knysak v. Shelter Life Insurance Co.*, 273 Ill. App. 3d 360, 652 N.E.2d 832 (1995); *Kohlmeier v. Shelter Insurance Co.*, 170 Ill. App. 3d 643, 525 N.E.2d 94 (1988). These cases are factually different from this one.

In *Kohlmeier*, the plaintiff applied for a health insurance policy for himself and his family. The application included the following question: "Does any person to be insured now have any abnormality or deformity?" *Kohlmeier*, 170 Ill. App, 3d at 647. Though plaintiff was aware that his 10-year-old daughter was "slow in certain areas of learning," and had a high arched palate and eye problems, the plaintiff answered "no" to the question. 170 Ill. App. 3d at 652. Approximately six months later, the plaintiff's 10-year-old daughter was diagnosed with a congenital birth defect. When the plaintiff sought coverage for

her medical bills under the Shelter Insurance policy, the insurer refused coverage and rescinded the policy. Shelter Insurance claimed the plaintiff materially misrepresented his daughter's preexisting condition when he said she did not suffer from an "abnormality" or "deformity."

The appellate court found the question on the application was ambiguous:

> "The question on the application to which defendant contends plaintiff failed to disclose information uses the words 'abnormality' and 'deformity.' These terms, in context with the other questions on the application form, implied a physical abnormality or deformity and did not clearly state whether the abnormality or deformity to be disclosed was to be a mental or physical condition or both. We find the question relied on by defendant an ambiguous one. As such, when viewed in the light most favorable to plaintiff, the ambiguity of these terms must be resolved against defendant. Therefore, because the evidence indicated that [the plaintiff's daughter] did not have a readily apparent physical abnormality or deformity at the time plaintiff completed the application form, plaintiff did not fail to disclose material information on the application form. Further, no evidence presented indicated that [the daughter's] medical condition would require extensive medical treatment in the future such that defendant's risk was materially affected." *Kohlmeier*, 170 Ill. App. 3d at 652-53.

In *Knysak*, the insurer claimed the plaintiff misrepresented his wife's health condition on the insurance application. The plaintiff filled out the application on behalf of his wife because she did not speak English. Defendant answered "no" to questions regarding whether she had been treated for incidents of diabetes and high blood pressure. When the plaintiff's wife suffered a stroke, he sought coverage under the insurance policy. Coverage was denied after the insurance company found out she had been diagnosed and treated for both high blood pressure and diabetes prior to the plaintiff's application for the policy in question.

The appellate court rejected *Campbell*'s mandate that the statute be read so that a policy may be avoided where the misrepresentation was either intentional or material:

> "The insured's intent or knowledge, either objective or subjective, is really not relevant, if you follow *Campbell* to its logical conclusion. The sole issue may simply be as to whether there was a preexisting condition that would materially affect the acceptance of the risk or hazard assumed by the insurer. If an insured warrants that he and his dependents are in good health, when unbeknownst to the insured or anyone else in the world, they are not, the insured

has made a false warranty or misrepresentation under section 154, according to the reasoning in *Campbell*." *Knysak*, 273 Ill. App. 3d at 365.

Both *Knysak* and *Kohlmeier* distinguished *Campbell* on the basis that the plaintiffs were not aware of the disqualifying health condition when they filled out the application and therefore could not be said to have "misrepresented" that information. Both cases cite *Logan v. All-state Life Insurance Co.*, 19 Ill. App. 3d 656, 312 N.E.2d 416 (1974), which said:

"[A]n insurance company would not expect an applicant to answer questions concerning his past and present condition of his health with the skill of a trained physician. Thus, an insurance company cannot expect or require an applicant himself to disclose information concerning his health which is beyond the ken of an ordinary layman when he has not been given such information by his doctor." *Logan*, 19 Ill. App. 3d at 659.

These cases reason that a "misrepresentation" cannot take place where the applicant could not have been aware of the information until after the policy was issued. *Knysak*, 273 Ill. App. 3d 360.

●5 In this case, Mark's father was aware of the Mutual of Omaha policy though he did not realize Mark would still be an "eligible dependent" under the terms of that policy. While we might not expect an insurance applicant to disclose as yet undiagnosed medical problems even when symptoms are present, we could expect an applicant to review any existing insurance policies before applying for a new one. Mark's father should have reviewed the Mutual of Omaha policy before he applied for a new one instead of assuming his son no longer was covered by it. Because Spencer was acting as Mark's agent in applying for the policy, Mark may be charged with his father's knowledge. See *Ratliff v. Safeway Insurance Co.*, 257 Ill. App. 3d 281, 289, 628 N.E.2d 937 (1993) (agent's knowledge may be imputed to principal).

Whether the appellate decisions really are distinguishable, we are bound by *Campbell* and *Weinstein*. In the wake of these supreme court decisions, the legislature has had 43 years to amend the language of section 154. It has chosen not to do so. Though we agree the result is harsh, we find the statement on the Golden Rule policy was a "misrepresentation" for purposes of section 154 of the Code.

Mark alternatively contends the misrepresentation was not material.

●6 "Materiality is determined 'by the question whether reasonably careful and intelligent men would have regarded the fact stated as substantially increasing the chances of the event insured against, so as to cause a rejection of the application or different conditions.' " *Hatch*

*v. Woodmen Accident & Life Co.*, 88 Ill. App. 3d 36, 40, 409 N.E.2d 540 (1980), quoting *Weinstein*, 389 Ill. at 577. The failure to disclose material information in response to a question in an application may constitute a material misrepresentation. *Hatch*, 88 Ill. App. 3d at 40. "Materiality may be established by the testimony of the insurer's underwriter." *Ratcliffe*, 194 Ill. App. 3d at 28. However, materiality is generally a question of fact for a jury to decide. *Kohlmeier*, 170 Ill. App. 3d at 652.

●7 In this case, Golden Rule attached an affidavit from J. Patrick Rooney, the company's chief executive officer, to its response to Mark's summary judgment motion. In his affidavit, Rooney testified:

"6. I have always been emphatic that Golden Rule is not to issue coverage when the insured has other existing major medical insurance coverage. When an insured has two (or more) such policies, the co-pay and deductible are gone and, as such, the insured is no longer under an economic discentive [*sic*] not to incur medical expenses. This leads to a potential for overutilization and even fraud.

7. Golden Rule has *never issued* a policy where the insured has existing major medical insurance of which Golden Rule is aware without the requirement that the other insurance be terminated within a specified period of time.

8. Golden Rule, in accordance with the above Policy Statement, properly rescinded Mark Schwartz' coverage due to the failure to disclose the existence of other major medical insurance through Mutual of Omaha." (Emphasis in original.)

The record also includes a document prepared by Golden Rule's underwriting department after Spencer submitted a claim on behalf of his son. That document states that a policy would not have been issued if the Mutual of Omaha policy had been disclosed on Mark's application. Golden Rule attached an affidavit from Robert Woodward, its senior adjuster, to its response to Mark's second motion for summary judgment. In his affidavit, Woodward discusses the underwriting document. Woodward said:

"13. On July 2, 1985, I sent the existence of other insurance to the Underwriting Department to determine whether the Underwriting Department would have issued the policy had it known of the existence of the Mutual of Omaha policy at the time Mark Schwartz applied for Golden Rule insurance. A Control Data sheet, dated June 14, 1985, along with the application, the Mutual of Omaha letter and telephone call records, were sent to underwriting. ***

14. On July 2, 1985, Golden Rule's Underwriting Department issued the opinion that:

Our policy would not have been issued had we known of the

existence of other major medical insurance at the time of original underwriting.

\* \* \*

24. Golden Rule's rescission was consistent with Golden Rule's brochure \*\*\*.

\*\*\*

26. Golden Rule denied Mark Schwartz' claims and rescinded his policy based on the nondisclosure of other major medial [*sic*] health insurance which the Underwriting Department determined was material to the risk."

Another document, purportedly a part of Golden Rule's underwriting guidelines, advises, "It is the intent of Golden Rule not to issue the Inflation Guard policy on people who are covered by other insurance." This document was also attached to Golden Rule's response to Mark's second motion for summary judgment.

These documents and affidavits are not contested by Mark. Instead, Mark claims Golden Rule's failure to rescind the insurance policy issued to Spencer at the same time his policy was issued shows the misrepresentation is not material. Golden Rule contends its failure to rescind Spencer's policy was an oversight caused by a change in personnel in its legal department. We see this matter as an issue of fact. A trier of fact might find this was something other than an "oversight."

The only Illinois case that addresses the question of whether a misrepresentation concerning other insurance is "material" for purposes of section 154 is *Garde v. Country Life Insurance Co.*, 147 Ill. App. 3d 1023, 498 N.E.2d 302 (1986). While the appellate court found the insured's failure to disclose other insurance was a material misrepresentation, its finding was premised on the "egregious nature" of the misrepresentation. *Garde*, 147 Ill. App. 3d at 1033. In *Garde*, the insured failed to disclose over a million dollars of pending and issued insurance. The court found the existence of this insurance would have affected the terms and conditions under which the insurance company determined whether it would accept the risk involved. *Garde*, 147 Ill. App. 3d at 1034.

In his affidavit, Rooney testified Golden Rule refuses coverage if the insured has other coverage because "[w]hen an insured has two (or more) such policies, the co-pay and deductible are gone." Here, Mark did not have another policy. He was covered as an eligible dependent under his father's Mutual of Omaha policy, which was an excess major medical policy with a $10,000 deductible. A trier of fact may consider whether the concerns expressed by Rooney in his affidavit would have applied in this case.

We also see an inconsistency between Golden Rule's contention it never issued policies to those who had other coverage and its inclusion of an "alternate benefits" section in its policy language. If a policy is never issued to someone who has other insurance, or if it is rescinded when Golden Rule finds an insured has misrepresented that fact, why include a setoff provision that applies to existing policies? Here again, a trier of fact would have something to consider when determining materiality.

We find a material issue of fact exists on the question of the materiality of Mark's misrepresentation. *Garde*, 147 Ill. App. 3d at 1032 (materiality is a question of fact).

●8 Mark also attempts to avoid section 154 by contending he was not "covered" by the Mutual of Omaha policy but instead was merely "eligible" for coverage. He attempts to distinguish between the named insured, who he claims is "covered," and "eligible dependents." We do not find any support for this theory in case law. It is a theory that was not raised until late in this litigation. Before it was raised, both parties appeared to operate under the assumption that Mark was covered by the Mutual of Omaha policy. Throughout their depositions, both Spencer and Mark acknowledge Mark was "covered" by the Mutual of Omaha policy.

We believe that, unless the language of an insurance policy states otherwise, it is anticipated that all those who are entitled to benefits under the policy are "covered" by it, regardless of whether they are a "named insured" or an "eligible dependent." See *Laycock v. American Family Mutual Insurance Co.*, 289 Ill. App. 3d 264, 267, 682 N.E.2d 382 (1997) (where language of insurance policy is clear and unambiguous, it must be given its plain and ordinary meaning).

## Section 155 Sanctions

Golden Rule contends the trial court erred in granting summary judgment in favor of Mark on the issue of section 155 sanctions.

●9 Section 155 of the Code:

"(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action." 215 ILCS 5/155 (West 1998).

Section 155 acts as a remedy for an insured who encounters unnecessary difficulties in recovering under a policy. *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 679, 688 N.E.2d 757 (1997). Where there is a *bona fide* dispute over coverage, delay in settling a claim may not violate the statute. *Bedoya*, 293 Ill. App. 3d at 679.

●10 Our findings that Mark's statement on the application constitutes a misrepresentation and that a material issue of fact exists on the question of materiality mean a *bona fide* dispute does exist. We find the trial court erred in awarding section 155 sanctions. See *Kohlmeier*, 170 Ill. App. 3d at 657 (where determination regarding whether rescission of insurance policy is a close one, insurance company cannot be said to have acted in bad faith when it rescinded the contract).

In his cross-appeal, Mark contends the trial court erred in refusing to award *pro se* attorney fees under section 155. There is no need to determine whether the trial court erred in refusing to award *pro se* attorney fees to Mark under section 155.

### Signature on Policy

Golden Rule contends the trial court erred in finding it was not entitled to rescind the policy because it was not signed by Mark, as required by section 359a of the Code.

●11 Section 359a says, in part:
"(1) No policy of insurance *** shall be issued, except upon the signed application of the person or persons sought to be insured." 215 ILCS 5/359a (West 1998).

●12 Golden Rule does not cite any Illinois case law to support this theory, and we do not find any. While Golden Rule contends an applicant is in the best position to answer questions on an application and should be required to personally sign it, in this case Mark would not have been in any better position than his father to know of the Mutual of Omaha policy.

During his deposition, Mark testified his father always obtained health insurance coverage for him. He testified Spencer was "absolutely" authorized to act on his behalf in obtaining coverage. Spencer testified he, in turn, authorized Scharff to sign the applications on his behalf and on his son's behalf.

We find Golden Rule was not entitled to rescind the policy on this basis. The statute merely requires the application to be signed. Mark's application was signed. We find Golden Rule's contention has no merit.

## Other Issues

Although we remand for trial, other issues raised in the briefs most likely will reappear. We comment on them briefly:

●13-15 (1) The trial court erroneously dismissed Golden Rule's affirmative defense that the "alternative benefits" provision of the policy entitled it to offset payments made by other insurance companies. We conclude the language of the policy unambiguously provides for an offset where other insurance coverage exists and benefits were paid. Double recovery is impermissible in this state. *Pearson v. Stedge*, 309 Ill. App. 3d 807, 813, 723 N.E.2d 773 (1999) ("In Illinois, a plaintiff is entitled to only one recovery for an injury and double recovery is *** condemned"); see also *Costello v. Illinois Farmers Insurance Co.*, 263 Ill. App. 3d 1052, 1057, 636 N.E.2d 710 (1993) (double recovery under medical coverage not allowed where plaintiff already had received payments under uninsured motorist coverage and damages did not exceed limits of that coverage).

(2) If the trier of fact determines the Golden Rule policy should not have been rescinded, Schwartz is entitled to recover premiums for replacement coverage. The fact finder also will have to determine which of the "back-up" policies was reasonably required to provide coverage in place of the improperly rescinded Golden Rule policy. Whether Schwartz is entitled to recover any premiums paid by other entities that are not parties to this lawsuit becomes a fact issue. We agree Golden Rule should be entitled to depose a Blue Cross representative to determine whether the policy was subject to cancellation and whether multiple coverage was necessary.

(3) The trial judge correctly decided Schwartz was not entitled to 9% prejudgment interest pursuant to section 357.9 of the Insurance Code. 215 ILCS 5/357.9 (West 1998). The language in section 357.9 relied on by Schwartz became effective September 13, 1985, after the Golden Rule policy was issued, and does not apply.

## CONCLUSION

For the reasons set out above, we reverse and remand this cause for further proceedings consistent with this opinion.

*Reversed and remanded.*

HALL, P.J., and BURKE, J., concur.