In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 02-2301 & 02-2334

TIG INSURANCE COMPANY,

*Plaintiff-Appellee,*

*v.*

RELIABLE RESEARCH COMPANY,

*Defendant-Appellant,*

and

SECURITY UNION TITLE INSURANCE COMPANY,

*Intervenor-Appellant.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 01-C-45—**David R. Herndon**, *Judge.*

ARGUED DECEMBER 11, 2002—DECIDED JUNE 30, 2003

Before COFFEY, EASTERBROOK, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Security Union Title Insurance Company is out $245,000 as a result of the faulty title work of its agent, Reliable Research Company, in a closing involving Mortgage One. Things began to unravel for both Security Union and Reliable when Reliable tendered the Mortgage One claim to TIG Insurance Company,

its error and omissions insurer. TIG discovered, to its surprise, that Reliable had not been totally forthcoming with it when Reliable had applied for the policy in question. This prompted TIG to file a complaint in federal court seeking rescission of the policy on the basis of a material misrepresentation on Reliable's application for coverage. Typical procedural skirmishing ensued: Reliable filed a counterclaim against TIG, and Security Union intervened with claims against both TIG and Reliable. The district court granted TIG's motion for summary judgment, finding that the undisputed facts showed that Reliable's application contained a material misrepresentation that warranted rescission of the entire policy. Accordingly, the court rescinded Reliable's policy with TIG and ordered a premium refund. It later entered judgment for Security Union on its claim against Reliable. On this appeal, Reliable and Security Union have jointly challenged the ruling in favor of TIG. (Reliable has not raised any separate challenge to the ruling adverse to it in the Security Union action.)

Before oral argument, this court *sua sponte* questioned Security Union's standing to appeal the district court's judgment and ordered the parties to brief the issue on appeal. Deeper problems emerged at the argument, where it became apparent that the district court may have lacked subject-matter jurisdiction over Security Union's intervening counterclaim against TIG. The record now reveals that the part of TIG that is involved in this case is a California corporation with its principal place of business in Texas, and that Security Union is also a California corporation (with its principal place of business in California). Because the only basis for federal subject-matter jurisdiction was diversity, see 28 U.S.C. § 1332, and diversity is plainly lacking, we must dismiss this claim for want of jurisdiction. With respect to TIG's claim against Reliable, as to which federal jurisdiction is secure, we affirm.

**I**

Reliable is a title insurance and escrow issuing agent for Security Union. To perform its job, Reliable searches public records, and then, assuming a favorable result, it issues title insurance policies underwritten by Security Union. To protect itself against the occasional mishap in its general, title, deed and escrow work, Reliable purchased professional errors and omissions insurance (E&O) from TIG.

In applying for E&O coverage from TIG in mid-1999, Reliable submitted a form that, among other things, asked Reliable to list every claim or suit filed against it in the last ten years. In response to this question—number 24 on the application—Reliable disclosed only one claim filed nine years earlier that was resolved without any loss to Reliable or its E&O carrier at the time. In a renewal application Reliable revealed that this suit was filed against it by Trans America Finance. Reliable's application was incorporated into the policy that TIG ultimately issued, which contained the following provision against misrepresentation:

> If any Insured under this policy, or any of your authorized representatives, conceals or misrepresents any material fact or circumstance concerning this insurance, this policy will be void.

Undisclosed to TIG in response to Question 24, or anywhere else, was the fact that on November 8, 1995, in response to a complaint filed by one Thomas LeChien, an Illinois Circuit Court entered a permanent injunction against Reliable enjoining it from "preparing Deeds or other legal documents relating to the transfer of real estate . . . and that . . . Reliable Research, Inc. . . . cease and desist the unlawful practice of law."

Some time after obtaining E&O coverage, Reliable submitted claims for two lawsuits to TIG for defense. The

first related to a suit brought against it by Ethel Hudgens and the Illinois State Bar Association (ISBA) alleging that Reliable had violated the *LeChien* injunction, and that Reliable had failed properly to record a carry-back provision in a sale that Reliable closed. This error left Hudgens an unsecured creditor when the buyers subsequently filed for bankruptcy. Reliable's request for representation and coverage under the E&O policy in the Hudgens/ISBA matter was the first inkling TIG had that the *LeChien* injunction existed. TIG took steps to preserve its rights, including a reservation of the right to rescind Reliable's policy. Mortgage One Corporation filed the second lawsuit in question. It was similar to the Hudgens/ISBA action, in that it alleged that Reliable had failed to discover a writ of attachment on property that Mortgage One subsequently purchased, and that Reliable's error resulted in Mortgage One's loss of a security interest in the property. TIG again agreed to assume the defense subject to its earlier reservation of the right to rescind Reliable's policy based on the failure to disclose the *LeChien* injunction.

On January 18, 2001, TIG filed a complaint seeking both a declaratory judgment confirming its right to rescind the Reliable policy and actual rescission of the policy, on the ground that Reliable's failure to disclose the *LeChien* injunction constituted a material misrepresentation on Reliable's part. TIG then filed a motion for summary judgment on May 11, 2001. Over three months later, on August 27, 2001, Security Union moved successfully to intervene in the lawsuit. In its complaint Security Union sued Reliable to recover the $245,000 that it had paid in conjunction with Reliable's faulty title search in the Mortgage One case; it also brought a claim against TIG for a declaration that TIG was obliged to cover Reliable in the claim by Security Union—the mirror image of the declaratory judgment that TIG was seeking. In early January

2002, the district court granted TIG's motion for summary judgment finding that the E&O policy application unambiguously required Reliable to disclose the *LeChien* injunction and that Reliable's failure to do so constituted a material misrepresentation as a matter of law. The district court then rescinded TIG's policy and ordered a refund of Reliable's premium.

**II**

We turn first to the question of federal jurisdiction over the portion of this case that involves Security Union's claim against TIG. The problem, as we noted above, is a fundamental one: did the district court properly assert diversity jurisdiction over this claim? As an intervening plaintiff in a case where federal jurisdiction is premised on 28 U.S.C. § 1332, Security Union bore the burden of establishing subject-matter jurisdiction. *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 979 (7th Cir. 2000) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)). See also FED. R. CIV. P. 8(a). This means that it needed to put evidence into the record showing that complete diversity existed between itself and TIG. Security Union has not met that burden, despite being given several chances to do so. In its intervening complaint, Security Union alleged that TIG was a Texas corporation with its principal place of business in Texas. So far, so good: if that had been uncontested as a factual matter, then diversity would have been present, because Security Union is a California corporation with its principal place of business in California. But TIG contested a crucial part of the jurisdictional allegation: it responded that it was a *California* corporation with its principal place of business in Texas. Because corporations have the citizenship of both their state of incorporation and the state where their principal place of business is located, see 28 U.S.C.

§ 1332(c)(1), jurisdiction is lacking under TIG's version of the facts. The discrepancy between the two parties' accounts was not resolved in the district court, though it should have been. In any event, this court (as was its duty) sought clarification. In a supplemental statement Security Union again insisted that TIG is a Texas corporation with its principal place of business in Texas, but it did not document that fact in any detail. For its part, TIG filed a response to Security Union's memorandum in which it reiterated that it is a California corporation with its principal place of business in Texas. Because the burden of proving subject-matter jurisdiction lies on the party attempting to assert jurisdiction, we must conclude on this record that diversity jurisdiction is lacking between these two companies.

Security Union has attempted to wiggle its way out of the inevitable dismissal of its claim against TIG by an end-run around § 1332. It need not satisfy that statute, it asserts, because non-diverse parties may intervene in a diversity suit without depriving the court of its original diversity jurisdiction. That proposition, however, was debatable before 1990, and whatever support it may have had was eliminated with the enactment of the supplemental jurisdiction statute, which was part of the Judicial Improvements Act of 1990, Act of Dec. 1, 1990, Pub. L. 101-650, 104 Stat. 5089, codified at 28 U.S.C. § 1367. See *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997); *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997). Section 1367(b) explicitly states that

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts *shall not have supplemental jurisdiction* under subsection (a) over claims by plaintiffs . . . seeking to intervene as plaintiffs under Rule 24 . . . when exercising supplemental jurisdiction over

such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added).

That language is as clear as it could be, and it means that Security Union cannot rely on supplemental jurisdiction to support its Rule 24 claim in intervention against TIG, because the exercise of such jurisdiction would be inconsistent with the requirements of § 1332. No other basis for jurisdiction exists. Security Union is mistaken to think that the Declaratory Judgment Act, 28 U.S.C. § 2201, can help it, because that statute does not and cannot serve as an independent basis for federal jurisdiction. See *Ameritech Benefit Plan Comm. v. Communication Workers of Am.*, 220 F.3d 814, 818 (7th Cir. 2000), *cert. denied* 531 U.S. 1127 (2001). Since the record does not refute the fact that TIG is indeed a California corporation, complete diversity between TIG and Security Union, also a California corporation, is lacking, and we are left with no choice but to dismiss Security Union's claim against TIG for want of jurisdiction. In light of this conclusion, we have no need to address the question whether Security Union had standing to appeal the district court's judgment, and we therefore express no opinion on that point.

## III

We turn then to Reliable's appeal from the judgment in favor of TIG. Federal jurisdiction is secure over this part of the case, as Reliable is a Missouri corporation with its principal place of business in Missouri, and the amount in controversy easily exceeds $75,000. Reliable would like us to find that genuine issues of fact remain on the question whether its failure to disclose the *LeChien* injunction justifies TIG's rescission of the insurance policy.

Illinois law permits an insurer to rescind an insurance policy if the insured's application for coverage contains a misrepresentation that was made with intent to deceive or that is material. *Methodist Med. Ctr. v. American Med. Ctr. of Ill.*, 38 F.3d 316, 319 & n.6 (7th Cir. 1994) (quoting 215 ILL. COMP. STAT. 5/154). (We analyze this appeal under Illinois law even though Reliable's E&O policy with TIG did not contain a choice of law provision, because the parties now agree that Illinois law governs. See *In re Stoecker*, 5 F.3d 1022, 1029 (7th Cir. 1993).) Rather than pressing the argument that Question 24 did not require disclosure of the *LeChien* injunction, an argument that the district judge rejected as patently absurd, Reliable appears to concede that it should have disclosed the injunction on its application for E&O coverage. Its principal effort to avoid liability is through the argument that its failure to disclose was not material.

We agree with both the district court and Reliable that there is no serious question about whether the application called for Reliable to disclose the injunction. Reliable had argued that the phrase "claims/suits" on the application was ambiguous. The district court dismissed this with the observation that these are two of the "most common terms in the law." A lawsuit that was resolved by a permanent injunction obviously constituted a "'claim/suit' instituted against Reliable Research in the preceding ten years," in the words of Question 24, and we agree with the district court that there is no genuine issue of fact on the question whether Reliable's failure to disclose that injunction constituted a misrepresentation.

As we noted above, however, a misrepresentation standing alone is not enough for rescission: the misrepresentation must either be material or intentionally deceptive. 215 ILL. COMP. STAT. 5/154. The parties here have focused on materiality, rather than intent to deceive, and we accordingly do likewise.

A misrepresentation is material if it "affects either the acceptance of the risk or the hazard assumed by the company." *Id*; see also *Garde v. Inter-Ocean Insur. Co.*, 842 F.2d 175, 176 (7th Cir. 1988). The district court found that Reliable's omission of the *LeChien* injunction was material as a matter of law, and granted summary judgment in TIG's favor on that basis. We review that decision *de novo. Methodist Med. Ctr.*, 38 F.3d at 319. Illinois courts frame the materiality question in terms of whether " 'reasonably careful and intelligent persons would regard the facts as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application.' " *Id.* at 320 (quoting *Small v. Prudential Life Ins. Co.*, 617 N.E.2d 80, 83 (Ill. App. Ct. 1993)). Testimony from an insurer's underwriter may be used to establish the materiality of omitted information. *Id.*

Reliable makes several arguments in support of its position that the omission of the *LeChien* injunction was not material as a matter of law. First, it insists that TIG merely insured Reliable against "faulty title work," and as such an injunction barring Reliable from engaging in the unauthorized practice of law does not "increase the chances of the event insured against." *Id.* (internal quotation marks and citation omitted). This argument, however, directly conflicts with Reliable's application for insurance from TIG, which listed its work as: 70% title agent; 20% escrow agent/closer; 10% title abstractor. Reliable's claim that its business is comprised of 95% title insurance and 5% escrow closings is a half-truth; these figures represent Reliable's breakdown of profits, not a breakdown of the work that it performs. Most damaging to Reliable's argument that TIG only insured its title work is its response to Question 30 on the application for insurance. Question 30 asked if Reliable wished "to apply for coverage limited to escrow/closing operations only without coverage for any other title-related activity." Reliable answered "no" to this

question, which strongly suggests that it sought insurance for all of its work. And as TIG points out, the policy that it issued to Reliable is not nearly as narrow as appellants would have this court believe. Nowhere in the policy is coverage limited to Reliable's title search work; instead the policy states that it covers "Damages arising out of Wrongful Acts committed in the course of your providing Professional Services." Such a statement of coverage, in the context of Reliable's application, can mean only that TIG insured all of the work Reliable described, not merely its title searching.

Reliable's second argument has somewhat more substance. Relying heavily on *Golden Rule Insurance Co. v. Schwartz*, 751 N.E.2d 123 (Ill. App. Ct. 2001), affirmed in part, vacated in part on other grounds by 786 N.E.2d 1010 (Ill. 2003). Reliable asserts that the record does not support the conclusion that omission of the *LeChien* injunction was material as a matter of law. In Reliable's view, the district court gave undue weight to the affidavit of TIG's underwriter Kerrie Ronan, which TIG submitted in support of its motion for summary judgment. At most, Reliable urges, this affidavit raises a question of fact for the jury on materiality. Ronan merely testified that she would not have issued the policy had she known of the *LeChien* injunction. While an underwriter's testimony is allowed to establish the materiality of a misrepresentation, Reliable insists that such testimony must do more than merely state the obvious: if we had known of this risk we wouldn't have issued the policy in the first place. Instead, it argues, the underwriter should testify from personal knowledge and experience about what information shapes the decision to underwrite a policy and how that information is used. If such testimony is inconsistent or in any way supports conflicting inferences, a jury should resolve the issue. *Golden Rule*, 751 N.E.2d at 133.

Ronan's affidavit, in Reliable's view, supports more than one logical inference about whether Reliable's failure to disclose the *LeChien* injunction was material. In her affidavit, Ronan swore that "[w]ith the absence of any *significant* claims or suits listed on the Reliable 8/26/99 Application, the Reliable account was favorably analyzed by the Underwriters as a 'clean' account." (Emphasis added.) This statement, Reliable insists, contradicts Ronan's subsequent assertion that had TIG known of the *LeChien* injunction it would have never issued Reliable E&O coverage. Reliable's point is that TIG considered Reliable a "clean" account despite the fact that Reliable did reveal one claim against it in response to Question 24. If the account could be "clean" with one claim, then maybe it would have been "clean" with the *LeChien* injunction too. At a minimum, Reliable argues, TIG cannot now insist that disclosure of the *LeChien* injunction would automatically have been material or would have downgraded Reliable from its "clean" risk status.

All undisclosed claims are not equal, however. We find nothing contradictory in Ronan's statements, which merely attest that the absence of "significant" claims or suits against Reliable made it a clean risk. It is perfectly reasonable to conclude that the nine-year-old claim that resulted in no loss to Reliable or its E&O carrier would not be considered significant, but that disclosure of a permanent injunction barring Reliable from engaging in the unauthorized practice of law would. Indeed, because Reliable's failure to comply with the *LeChien* injunction led directly to TIG's exposure with respect to the Hudgens/ISBA suit, it borders on the surreal to think that the nondisclosure was immaterial. In any event, we agree with the district court that "a court order permanently enjoining a title company from the unauthorized practice of law would be a 'red flag' to any reasonably careful and intelligent underwriter of Title and Escrow Professional Liability Insurance."

Finally, Reliable invokes the strong policy preference in Illinois to send materiality questions to the jury. *Golden Rule*, 751 N.E.2d at 132. We acknowledge that this preference exists, but (aside from the fact that judge/jury allocations in state courts do not bind federal courts) it is triggered only where the issue actually presents a choice for the jury. The federal court was bound to follow FED. R. CIV. P. 56, under which summary judgment is proper when there are no genuine issues of material fact. Furthermore, nothing in the Supreme Court of Illinois's recent decision affirming in part the lower court's decision in *Golden Rule Insurance Co. v. Schwartz,* 786 N.E.2d 1010 (Ill. 2003), changes the substantive law that would be applied. There the Supreme Court of Illinois found a question of fact over whether the insurer would have issued the insurance policy at issue "had it known the true facts." *Id.* at 1017. No such question of fact exists here, as we have already explained. It is clear that the permanent injunction barring Reliable from engaging in the unauthorized practice of law was material to TIG's insurance decision, and summary judgment was proper on TIG's claims.

**IV**

For the reasons we have explained, Security Union's suit against TIG is DISMISSED for want of jurisdiction. As a practical matter, this may not mean much, because TIG's suit against Reliable raised the same questions about its right to rescind the E&O policy in question. As to that, we AFFIRM the judgment of the district court in favor of TIG. Costs on appeal shall be assessed against Reliable and Security Union.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*