[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13358
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cv-14100-JEM


HEDGE CAPITAL INVESTMENTS LIMITED,
 a company incorporated in England and Wales,

Plaintiff-Appellant,

SUSTAINABLE WEALTH INVESTMENTS (UK) LIMITED,
Sustainable Wealth Investments (UK) Limited, et al.,

Intervenor-Plaintiffs-Appellees,

versus

SUSTAINABLE GROWTH GROUP HOLDINGS LLC,
a Delaware corporation,
SUSTAINABLE GROWTH GROUP USA,
a Delaware corporation,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 4, 2014)

Before ED CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Hedge Capital Investments Limited appeals the district court's decision granting summary judgment to defendants Sustainable Growth Group Holdings LLC and Sustainable Growth Group USA. Hedge Capital contends, for the first time on appeal, that the district court lacked subject matter jurisdiction to adjudicate this case.

I.

This case is part of the fallout from a Ponzi scheme in Great Britain. The basic facts are these: Sustainable Growth Group (UK) Limited[1] duped British investors into buying stakes in environmentally friendly farm projects in foreign countries. SG Limited never developed the proposed farms. It simply paid off its current investors by duping new investors into buying stakes in new bogus farm projects in different locales. One of those duped investors was Hedge Capital. From December 2011 to February 2012, Hedge Capital wired £1.83 million to one of SG Limited's affiliate companies so that it could invest in a development project in Florida. The project was headed by the two defendants in this case, SG Holdings and SG USA. The day after the last wire transfer, the United Kingdom's

---

[1] Because the Ponzi scheme involved using a host of companies with "Sustainable Growth" or "Sustainable Growth Group" in their titles, we will distinguish those various companies by the last part of their title, calling them "SG _____." For example, we will refer to Sustainable Growth Group (UK) Limited as "SG Limited."

2

Serious Fraud Office took possession of certain assets of SG Limited and placed them in receivership.[2]

Hedge Capital filed suit in federal district court against SG Holdings and SG USA in March 2012. Its amended complaint raised seven claims, the gist being that the £1.83 million Hedge Capital was duped into investing had been transferred to the defendants and used to purchase land in Florida, yet the defendants refused to recognize Hedge Capital's ownership interest in that land. About a year after the suit was first filed, the district court granted a motion to intervene by the Receiver in charge of the various assets of SG Limited that were then in receivership. The intervenor-complaint sought declaratory relief against Hedge Capital. The requested relief would, among other things, enjoin Hedge Capital from recovering proceeds that were fraudulently transferred to the defendants and enter judgment in favor of the defendants on all of Hedge Capital's claims. The intervenor-complaint justified that relief in part on the ground that Hedge Capital was a creditor in the receivership proceedings in the United Kingdom and was therefore barred from trying to recover its money through litigation outside those proceedings.

---

[2] The entities placed in receivership included: (1) SG Limited, (2) Sustainable Wealth Investments (UK) Limited, and (3) Sustainable Agroenergy PLC. The second and third companies were affiliates owned by SG Limited. In fact, Sustainable Wealth was the company to which Hedge Capital wired the £1.83 million. All three entities are now in liquidation.

3

Two months later, the district court granted the defendants' summary judgment motion after determining that Hedge Capital had not produced any evidence that it had made an agreement with the defendants before SG Limited and its assets were placed in receivership. The order did not mention any ruling on the Receiver's intervening complaint. Nor did it specifically address Hedge Capital's pending motion for sanctions based on spoliation of evidence. The order did, however, declare that: "This case is closed and all pending motions are denied as moot." (Capitalization omitted.) The final judgment, filed separately three days later, granted judgment in favor of SG Holdings and SG USA, but did not mention the Receiver or the intervenor-complaint.

After Hedge Capital filed its notice of appeal, this Court noted several jurisdictional issues in this case. We issued an order directing the parties to address three questions: (1) whether the district court's order had resolved the intervenor-complaint and what effect, if any, that had on the judgment's status as a final order under 28 U.S.C. § 1291; (2) whether the amended complaint's failure to allege the citizenship of all SG Holdings' members created a defect regarding subject matter jurisdiction under 28 U.S.C. § 1332; and (3) assuming the amended complaint was defective, whether the defect could be cured by amendment or other action. The initial response Hedge Capital filed was noncommittal about whether

4

we had jurisdiction over the appeal.  But the later brief that it filed took the position that we lack subject matter jurisdiction.[3]

## I.

Complete diversity is an absolute requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.[4]  See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1557 (11th Cir. 1989).  That requirement is not met "where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides."  Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 860 (11th Cir. 2000).  That rule creates three issues of subject matter jurisdiction here.

## A.

The first two issues concern diversity between Hedge Capital and SG Holdings.  Hedge Capital is a British Corporation.  SG Holdings, as a limited

---

[3] In that brief, Hedge Capital also argues that, assuming the district court had subject matter jurisdiction, it erred by entering summary judgment because (1) the court failed to expressly address Hedge Capital's pending motion for sanctions based on spoliation of evidence, which could have led to the discovery of material disputed facts; and (2) the court "allowed belated intervention" by the Receiver, but did not provide adequate time for discovery into potential material facts in the Receiver's possession.  We cannot address those merits issues because further factfinding is needed to resolve the threshold issue of subject matter jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 1012 (1998).  If on remand the district court's factfinding reveals that it does have subject matter jurisdiction over Hedge Capital's complaint, the district court may revisit those two non-jurisdictional issues.

[4] That requirement cannot be satisfied by consent, stipulation, or waiver.  See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1304 (11th Cir. 2011); MacGinnitie v. Hobbs Grp., LLC, 420 F.3d 1234, 1239 n.1 (11th Cir. 2005).  So the defendants' frequent references to the parties' stipulations, and Hedge Capital's failure to raise the issue below, are irrelevant.

liability company, is considered to be a citizen of every state and country of which its members are citizens.  See Rolling Greens MHP, LP v. Comcast SCH Holdings LLC, 374 F.3d 1020, 1022 (11th Cir. 2004).  That wrinkle raises two issues relating to subject matter jurisdiction.

The first issue is that Hedge Capital's amended complaint failed to allege the citizenship of all the members of SG Holdings.  It was required to do so under this Court's precedent.  See Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ., 663 F.3d 1304, 1305 (11th Cir. 2011).  If the evidence in the record were clear that all of SG Holdings' members were United States citizens, we could cure the technical defect by allowing an amendment, 28 U.S.C. § 1653, but it is not clear what the citizenship of all its members or even their identity is.  Because the diversity of the parties was not raised in the district court, there was no specific factfinding about the identity or citizenship of SG Holdings' members.  The snippets of the record that do reference SG Holdings' membership create a muddy picture.  There is deposition testimony stating that the LLC has one member and that he was a Florida resident.  But there are also documents in the record indicating that the LLC had a member residing in Hong Kong, as well as deposition testimony indicating that the LLC had British members.

When a court of appeals discovers "a serious question regarding the factual predicate for subject-matter jurisdiction, we should remand for a finding to resolve

6

the jurisdictional question." Belleri v. United States, 712 F.3d 543, 548 (11th Cir. 2013) (quotation marks and alterations omitted). Such factfinding is needed here to resolve the membership of SG Holdings and its resulting citizenship for purposes of diversity jurisdiction.[5]

## B.

The next issue concerns the lack of diversity between Hedge Capital and the Receiver. The black letter rule for complete diversity tells us that the issue turns on whether "there are foreign entities on both sides of the action." Iraola, 232 F.3d at 860. That does not mean, however, that we assess diversity by simply looking at which parties fall on which side of the "v." in the case name. Instead, we "look to the true interest of the parties and the positions asserted by them before the district court." Weller v. Navigator Marine, Inc., 737 F.2d 1547, 1548 (11th Cir. 1984). If two parties are nominally placed on the plaintiff's side of the action, but have opposing interests in the outcome of the case, we must realign those parties. See City of Vestavia Hills v. Gen. Fid. Ins. Co., 676 F.3d 1310, 1313–14 (11th Cir. 2012); Griffin v. Lee, 621 F.3d 380, 388 (5th Cir. 2010). So when an intervening

---

[5] In responding to this Court's three jurisdictional questions, the defendants attached an affidavit attesting that SG Holdings had one member who was a Florida resident. We are generally limited to the record in determining subject matter jurisdiction. See Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1269 (11th Cir. 2013). Though we may have the authority to expand the current record and consider the defendants' affidavit, see Ross v. Kemp, 785 F.2d 1467, 1474–75 (11th Cir. 1986), doing so would not be appropriate given the conflicting evidence in the record and the disagreement between the parties.

plaintiff asserts claims against the original plaintiff, it does not matter that both of them have been labeled as "plaintiffs." See City of Vestavia Hills, 676 F.3d at 1313–14. The intervening plaintiff and the original plaintiff must be diverse. TIG Ins. Co. v. Reliable Research Co., 334 F.3d 630, 633–35 (7th Cir. 2003).

The Receiver and the entities he represents are all British citizens for purposes of diversity jurisdiction. So is Hedge Capital. And the Receiver's intervening complaint seeks a declaratory judgment against Hedge Capital, which means they have opposing interests in the outcome of the case. The district court therefore lacked jurisdiction to consider the intervening complaint.

The Receiver's arguments against this conclusion are not persuasive. He points out that his proposed intervening complaint included claims against the two defendants, and it was the district court's order that limited the intervening complaint to claims against Hedge Capital. But that is irrelevant under our precedent. All we consider is the parties' interest in the outcome of the suit as it exists before the court. See City of Vestavia Hills, 676 F.3d at 1313–14. The Receiver also asserts that 28 U.S.C. § 1367(b) allows the district court to exercise supplemental jurisdiction over the intervening complaint. But that argument is foreclosed by the plain text of the statute, which states that:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction . . . over claims by persons . . . seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising

8

supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b). See TIG Ins. Co., 334 F.3d at 634–35. We must therefore remand with directions that the district court dismiss the intervenor-complaint for lack of subject matter jurisdiction.[6]

## II.

A district court has no power to enter judgment if it lacks subject matter jurisdiction. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 1012 (1998). We therefore vacate the district court's judgment and remand the case for further proceedings. The district court should find the facts necessary to identify the membership of SG Holdings and its resulting citizenship for purposes of diversity jurisdiction and, if those facts establish jurisdiction, allow an amendment of the complaint to allege those facts. The intervenor-complaint should be dismissed without prejudice. See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232–33 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice"). If the district court determines that it does have subject matter

---

[6] Because the intervenor-complaint is due to be dismissed, we need not address the first jurisdictional question we asked the parties, which was whether the district court's failure to explicitly mention the intervening complaint in its final judgment affects the finality of its order for purposes of 28 U.S.C. § 1291.

jurisdiction over the complaint, it may revisit the other issues raised in Hedge

Capital's brief to this Court.  See supra note 3.

**VACATED, REMANDED IN PART, and DISMISSED IN PART.**

10