Docket No. 92215–Agenda 9–November 2002.

GOLDEN RULE INSURANCE COMPANY, Appellee, v. MARK

 SCHWARTZ, Appellant.

Opinion filed January 24, 2003.

JUSTICE FREEMAN delivered the opinion of the court:

In July 1985, plaintiff, Golden Rule Insurance Company, filed an action in the circuit court of Lawrence County, seeking a declaration that it was entitled to rescind a health insurance policy it had issued to defendant, Mark Schwartz. Defendant subsequently filed a countersuit in the action. In 1997, the cause was transferred to the circuit court of Cook County. Ultimately, the circuit court granted summary judgment in defendant’s favor on the declaratory judgment action and on the first count of defendant’s counterclaim. The circuit court also ruled that defendant was entitled to sanctions under section 155 of the Illinois Insurance Code and therefore granted summary judgment on that issue as well. The circuit court awarded defendant $447,074 in damages. Both parties filed cross-appeals from the circuit court’s ruling.

The appellate court held that the circuit court’s entry of summary judgment in defendant’s favor in the declaratory judgment action was erroneous and reversed and remanded the matter for further proceedings. 323 Ill. App. 3d 86. We granted defendant’s petition for leave to appeal (177 Ill. 2d R. 315(a)), and now affirm in part and vacate in part the appellate court’s judgment.

BACKGROUND

In the spring of 1985, defendant was a 23-year-old full-time medical student. Due to defendant’s age, his father, Spencer Schwartz (Spencer), inquired of his insurance broker about insurance coverage for defendant. The broker sent Spencer separate Golden Rule applications for defendant and the rest of Spencer’s family. The broker advised Spencer that defendant would have to be covered under a separate policy because defendant was too old to be covered as a dependent under a family policy. On March 11, 1985, the broker filled out the Golden Rule applications while Spencer, on defendant’s behalf, answered the questions on the telephone.

Question 9 on the application asks: “Are any persons named in #1 [proposed insured] covered by, or has application been made for, any type of Life, Disability, or Medical Insurance?” This question was answered in the negative. The application contains the following information with respect to other insurance:

“This policy will not be issued as a supplement to other health plans that you may have at the time of application. Medical payment provisions under liability policies and small cancer only policies do not affect our underwriting. A misstatement in the application about other medical insurance may cause us to void the policy. If, after the policy is issued, you are covered by other plans, the benefits paid under these other plans may be used to help satisfy the deductible and 20% coinsurance ***. Other plans are all policies and plans that provide benefits for hospital, surgical, or medical expenses, including individual and family policies, group programs, union programs, automobile medical payments insurance, Medicare and others.”

The application also includes the following statement just above the signature line:

“I represent that the statements and answers in this application are true and complete to the best of my knowledge and belief. I agree that *** the statements and answers given in this application and any amendments to it will form the basis of any insurance issued.”

Based on the application, Golden Rule issued a health insurance policy in defendant’s name which became effective on March 14, 1985.

On March 24, 1985, defendant suffered serious injuries in an automobile accident which took place in New York. As a result, Spencer reviewed his insurance policies and realized that defendant was covered not only by the Golden Rule policy, but was also an “eligible dependent” under a policy Spencer held with Mutual of Omaha. The Mutual of Omaha policy was a group policy held through the American Bar Endowment and was issued to Spencer in 1973. Defendant submitted claim forms to both Mutual of Omaha and Golden Rule.

During its investigation of the claim, Golden Rule learned of the existence of the Mutual of Omaha policy. Based on this, Golden Rule decided to rescind its policy, which prompted the instant litigation. In its declaratory judgment action, Golden Rule alleged that defendant’s failure to disclose the Mutual of Omaha policy constituted a material misrepresentation which justified rescission of the policy. Defendant filed a countersuit, in which he claimed, 
inter alia
, that Golden Rule (i) was not entitled to offset damages with medical payments made by other insurance companies, (ii) engaged in improper claims practices which allowed for attorney fees under section 155 of the Illinois Insurance Code and (iii) breached its contract with defendant which entitled defendant to a recovery of all damages reasonably forseeable as a result of the breach.

The circuit court initially concluded that, as a matter law, defendant did not make a material misrepresentation on the application with respect to question 9. As to the claims made in defendant’s countersuit, the circuit court granted defendant summary judgment, ruling that Golden Rule could not offset damages with payments made by other insurers. The circuit court also ruled that defendant was entitled to sanctions under section 155, but was not entitled to 
pro se
 attorney fees. As for the breach of contract claim, the circuit court found defendant entitled to recover the premiums he paid for comparable replacement coverage, but was not entitled to any prejudgment interest. The case was thereafter set for a bench trial in order to determine damages, after which judgment was entered in defendant’s favor in the amount of $447,074. The circuit court reserved the issue of attorney fees and added Supreme Court Rule 304(a) language in its order, making it immediately appealable.

On appeal, Golden Rule challenged the circuit court’s decision, arguing that it was entitled to rescind its policy due to defendant’s material misrepresentation on the application. Golden Rule also contended that sanctions should not have been awarded in this case. Defendant filed a cross-appeal in which he maintained that the circuit court erred in finding that prejudgment interest was not appropriate in this case. Defendant further argued that the circuit court erred in refusing to award 
pro se
 attorney fees as sanctions.

The appellate court reversed the circuit court’s entry of summary judgment in favor of defendant on the misrepresentation issue. The appellate court held that a misrepresentation “made in good faith or resulting from a mistake of the applicant is enough to avoid the contract if it was material to the risk assumed by the insurance company.” 323 Ill. App. 3d at 93. In reaching this conclusion, the appellate court relied upon section 154 of the Insurance Code, which provides that an insurance contract may be voided on the basis of a misrepresentation that is either intentional or material. 323 Ill. App. 3d at 92-94. The court concluded that whether the misrepresentation in this case was material, however, was a question of fact which precluded the entry of summary judgment. 323 Ill. App. 3d at 96-99. The appellate court also ruled that the misrepresentation issue in the case constituted a 
bona fide
 dispute which precluded an award of sanctions under section 155. 323 Ill. App. 3d at 99-100. Although the appellate court remanded the cause on the rescission issue, it commented briefly on several other issues which it believed likely to “reappear”–namely that Golden Rule was entitled to an offset and that defendant was not entitled to prejudgment interest. 323 Ill. App. 3d at 101.

ANALYSIS

We begin our discussion by noting that summary judgment is appropriate when “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” 735 ILCS 5/2–1005(c) (West 2000); 
Petrovich v. Share Health Plan of Illinois, Inc.
, 188 Ill. 2d 17, 30-31 (1999). The purpose of summary judgment is not to try a question of fact, but to determine if one exists. 
Robidoux v. Oliphant
, 201 Ill. 2d 324 (2002). Our review of an order granting summary judgment is 
de novo
. 
Morris v. Margulis
, 197 Ill. 2d 28, 35 (2001).

Defendant argues that he did not make a misrepresentation on the Golden Rule application because his answers were given on the basis of his “knowledge and belief.” He contends that the appellate court “completely disregarded” the “to the best of your knowledge and belief” language and, as a result, misapplied section 154 of the Insurance Code to this case.

We believe it unfair of defendant to characterize the appellate court as having “completely disregarded” the knowledge and belief language contained in the application. The appellate court did not consider the language’s effect on the case because defendant did not ask it to do so. In fact, defendant never argued that this language played any role in the analysis of this issue until he filed his petition for rehearing in the appellate court. “Questions not raised in the trial court cannot be argued for the first time on appeal.” 
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342, 355 (1998). Not surprisingly, Golden Rule encourages us to apply this rule here.

The rule of waiver, however, serves as a limitation on the parties and not the court. This court “is not precluded from considering issues not properly preserved by the parties, and indeed has ‘the responsibility *** for a just result and for the maintenance of a sound and uniform body of precedent [that] may sometimes override the considerations of waiver that stem from the adversary character of our system.’ ” 
Jackson Jordan, Inc. v. Leydig, Voit & Mayer
, 158 Ill. 2d 240, 251 (1994), quoting 
Hux v. Raben
, 38 Ill. 2d 223, 225 (1967). We believe that this case falls within this exception, and we therefore address the issue on its merits.

In determining the effects of a misrepresentation on an insurance coverage application, section 154 of the Insurance Code provides that:

“No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance *** shall defeat or avoid the policy or prevent its attaching unless such mispresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.” 215 ILCS 5/154 (West 1998).

The statute establishes a two-prong test to be used in situations where insurance policies may be voided: the statement must be false and the false statement must have been made with an intent to deceive or must materially affect the acceptance of the risk or hazard assumed by the insurer. 
Campbell v. Prudential Insurance Co. of America
, 15 Ill. 2d 308 (1958); 
Weinstein v. Metropolitan Life Insurance Co.
, 389 Ill. 571 (1945). Under the statute, therefore, a misrepresentation, even if innocently made, can serve as the basis to void a policy. 
Campbell
, 15 Ill. 2d at 312.

We note that section 154 is representative of statutes which “are designed to relieve against the rigorous consequences of the common-law rules as to warranties and misrepresentations concerning insurance, particularly if made in good faith with no intent to deceive and in relation to a matter which does not increase the risk or contribute to the loss.” 43 Am. Jur. 2d 
Insurance
 §1034 (1982); see also 
Campbell
, 15 Ill. 2d at 312 (explaining common law antecedents to the statute). Such statutes provide insureds with basic protections, but do not preclude the parties to the contract from entering into an agreement which is more favorable to the insured than the statute provides. Indeed,

“[i]t is axiomatic that parties are free to create the insurance contract they deem appropriate to their needs, provided its form and content do not conflict with any provision of law or public policy; and such is the case even though the resulting contract is improvident as to the insured.

Assuming compliance with a standard form and the absence of conflict with statute, the parties to a contract of insurance are free to incorporate such provisions and conditions as they desire.” 1 L. Russ, Couch on Insurance 3d §17:2 (1997).

Terms and conditions of a contract, if unambiguous, are enforced as they appear (
P.A. Bergner & Co. of Illinois v. Lloyds Jewelers, Inc
., 112 Ill. 2d 196, 203 (1986)) and will control the rights of the parties (
Midland Management Co. v. Helgason
, 158 Ill. 2d 98, 103 (1994), quoting 
Fichter v. Milk Wagon Drivers’ Union, Local 753
, 382 Ill. 91, 100 (1943)).

Courts in other jurisdictions which have examined the “knowledge and belief” language in light of statutes similar to our section 154 have concluded that the addition of such a standard in an application bypasses the “rigid” standard of accuracy set forth in the statute. See, 
e.g.
,
 Green v. Life & Health of America
, 704 So. 2d 1386, 1391 (Fla. 1998). In other words, the contract, “by its own terms, established a lesser knowledge standard” than that required by the statute. 
Green
, 704 So. 2d at 1391. As one federal court has explained,

“[the insurer] chose to include language in its group insurance enrollment form that had the effect of shifting the focus, in a determination of the truth or falsity of an applicant’s statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true. Thus, [the applicant’s] answer must be assessed in the light of his actual knowledge and belief.” 
Skinner v. Aetna Life & Casualty
, 804 F.2d 148, 150 (D.C. Cir. 1986).

In cases where insurance applications contained the “knowledge and belief” language, courts have not allowed insurers to seek refuge in the higher standard of accuracy encompassed by statute. See, 
e.g.
, 
Skinner
, 804 F.2d at 150; 
Hauser v. Life General Security Insurance Co.
, 56 F.3d 1330 (11th Cir. 1995); 
Green
, 704 So. 2d 1386 (and cases cited therein). The reason for doing so was best expressed by the Eleventh Circuit:

“Had [the insurer] intended to retain the ability to void the contract based on any inaccuracy, it should not have used the ‘knowledge and belief’ qualifying language. Such language would reasonably induce an insurance applicant to believe that they were covered under the policy if they answered the questions to the best of their knowledge and the insurer subsequently issued the policy. To permit an insurer to rescind a policy containing ‘knowledge and belief’ language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well. Insurance applicants faced with a policy that unambiguously stated that it could be voided for unknowing misstatements might have rejected those terms and sought another policy ***.” 
William Penn Life Insurance Co. of New York v. Sands
, 912 F.2d 1359, 1364 n.7 (11th Cir. 1990).

We agree with these sentiments and adopt the reasoning of those courts which have concluded that the addition of the “knowledge and belief” language to an application establishes a lesser standard of accuracy than that imposed under statutes akin to section 154.

In this case, Golden Rule opted to include language in its application that had the effect of shifting the focus, in a determination of the truth or falsity of an applicant’s statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true. Thus, the response given to question 9 must be assessed in the light of the applicant’s actual knowledge and belief.
(footnote: 1)
 Notwithstanding the above, we note that the presence of “knowledge and belief” provision in a policy will not insulate an applicant’s responses from all review. To that end, we approve the following test, adopted by the District of Columbia Circuit Court of Appeals, for examining responses to questions asked according to an applicant’s knowledge and belief:

“[T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief ***. *** What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed. To conclude otherwise would be to place insurance companies at the mercy of those capable of the most invincible self-deception–persons who having witnessed the Apollo landings, still believe the moon is made of cheese.” (Emphasis omitted.) 
Skinner
, 804 F.2d at 151.

Based upon the facts of the case now before us, we find that this assessment involves a credibility determination that may only be made by the jury.

An insurer has the right to inquire of an applicant whether that applicant has other insurance, and such information may be vital to the preliminary investigation of the proposed insured. 
Garde v. Country Life Insurance Co
., 147 Ill. App. 3d 1023, 1033 (1986) (collecting authorities). If a jury determines that the answer to Question 9 was not made to best of the applicant’s knowledge and belief, the jury must then determine whether the misstatement was material to the insurer’s acceptance of the risk and whether the insurer would have issued the policy had it known the true facts. This court has recognized that the issue of materiality is generally a question of fact for a jury to decide. 
Mooney v. Underwriters at Lloyd’s, London
, 33 Ill. 2d 566, 569 (1965). The application of this principle to the present case is particularly apt given that we view summary judgment as “a drastic means of disposing of litigation,” which must be granted only when the movant’s right to the relief “is clear and free from doubt.” 
Purtill v. Hess
, 111 Ill. 2d 229, 240 (1986). In this regard, we agree with the appellate court’s conclusion that questions of genuine fact exist as to materiality. The affidavits filed by both parties in this matter present questions as to motivation that should be resolved by a finder of fact. We also believe that, based on the evidence contained in the documents filed in this case, a question of fact exists as to whether Golden Rule would have issued the policy had it known the true facts. We therefore affirm the appellate court’s decision that this matter must be remanded for a trial on the rescission issue.

In light of our disposition, we agree with the appellate court that the circuit court erred in granting summary judgment in favor of defendant on the issue of section 155 sanctions.

Section 155 of the Insurance Code provides, in pertinent part, as follows:

“(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $ 25,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.” 215 ILCS 5/155 (West 1998).

Illinois courts have regarded section 155 as the legislature’s “remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.” See 
Richardson v. Illinois Power Co.
, 217 Ill. App. 3d 708, 711 (1991) (and cases cited therein). A trial court must consider the totality of the circumstances before it determines that an insurer’s conduct violates section 155 of the Illinois Insurance Code. See 
Mohr v. Dix Mutual County Fire Insurance Co.
, 143 Ill. App. 3d 989 (1986). If there is a
 bona fide
 dispute about coverage, delay in settling a claim may not violate the statute. 
Mohr
, 143 Ill. App. 3d at 998-99. We believe that the circumstances in this case establish that a 
bona fide
 dispute regarding coverage does indeed exist in this case. The appellate court correctly reversed the circuit court’s award of sanctions.

Although the parties urge this court to address the other issues that the appellate court briefly commented upon due to the likelihood of their reappearance in the future, we decline to do so. The courts of Illinois do not issue advisory opinions to guide future litigation, and this court has adhered to this rule with few exceptions. 
First National Bank of Waukegan v. Kusper
, 98 Ill. 2d 226, 233-34 (1983); 
People ex rel. Black v. Dukes
, 96 Ill. 2d 273, 276-77 (1983); 
Bluthardt v. Breslin
, 74 Ill. 2d 246, 250-51 (1979). We therefore vacate that portion of the appellate court’s judgment which addressed issues dealing with damages and attorney fees. Whether those issues will become relevant is, at this juncture, a matter of speculation. If they at some point become germane, the parties are free to raise these matters with the benefit of the additional facts and evidence that will be adduced at the proceedings held on remand. We further note that, due to our decision to apply the knowledge and belief language to the rescission issue, additional discovery may be needed by the parties in order to litigate this new aspect of the case. We trust that the circuit court will be sensitive to the needs of the parties with respect to this matter.

CONCLUSION

The appellate court correctly vacated the circuit court’s entry of summary judgment on the issue of the policy rescission. We therefore affirm the appellate court judgment in part, vacate it in part, and remand the cause to the circuit court for further proceedings consonant with this opinion.

Appellate judgment affirmed in part

and vacated in part;

cause remanded.

JUSTICE RARICK took no part in the consideration or decision of this case.

FOOTNOTES
1:     
1
We agree with the appellate court that because Spencer was acting as his son’s agent in applying for the policy, defendant may be charged with his father’s knowledge. 323 Ill. App. 3d at 96, citing 
Ratliff v. Safeway Insurance Co.
, 257 Ill. App. 3d 281, 289 (1993).