THIRD DIVISION
DECEMBER 26, 2007

1-06-1203

| | | |
|---|---|---|
| DONALD CONTI, Individually and as Special Administrator for the Estate of Patricia Conti, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04 CH 20851 |
| HEALTH CARE SERVICE CORPORATION, a Mutual Legal Reserve Company, d/b/a Blue Cross Blue Shield of Illinois, | ) ) ) | Honorable |
| Defendant-Appellee. | ) ) | Dorothy Kinnaird, Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiffs, Donald and Patricia Conti, filed a lawsuit in the circuit court of Cook County against the defendant, Health Care Service Corporation, a mutual legal reserve company, d/b/a/ Blue Cross Blue Shield of Illinois. Plaintiffs sought a declaratory judgment to reinstate their health insurance policy and damages for breach of contract resulting from the cancellation of the original policy. After this lawsuit was filed, Patricia Conti died, and Donald Conti now appears in his individual capacity and as special administrator for the estate of Patricia Conti. The plaintiffs appeal from an order of the circuit court granting the defendant's motion for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2004)). The plaintiffs argue that the trial court erred by: (1) finding that their insurance application representations were false as a matter of law; and (2) finding that the misrepresentations were material. We affirm the order of the circuit court.

BACKGROUND

The following facts have been adduced from the record. In 2004, the plaintiffs decided to purchase health insurance from the defendant. On March 25, 2004, Patricia visited her internist, Dr. Cyborski, for a physical examination because she was experiencing an upset stomach. According to Dr. Cyborski's notes, Patricia complained that she had no appetite and had been experiencing abdominal pain for the past two to three days. Dr. Cyborski noted that the patient had no health insurance and might need an ultrasound and CAT scan of the abdomen. However, Dr. Cyborski put the tests on "hold." Dr. Cyborski prescribed Protonix and noted that the patient was to call him if the symptoms worsened.

On March 29, 2004, the plaintiffs submitted an application to the defendant for health insurance. The plaintiffs answered "No" to all of the following questions:

"3. Has any person applying for coverage been advised, counseled, tested, diagnosed, treated, hospitalized, or recommended for treatment within the last 10 years for the following:

***

(F) Hernia; colitis; chronic diarrhea or intestinal problems; hemorrhoids or rectal disorder; gastroesophageal reflux; any disorder of the esophagus; ulcer of the stomach or duodenum, or any other digestive order or condition?

***

4. During the last 5 years, has any person applying for

coverage had a physical examination (including check-ups), diagnostic tests, consulted a physician, chiropractor or therapist?

5. Has any person applying for coverage been prescribed any medication due to sickness, disease, disorder, condition, injury, or counseling or for smoking cessation or weight loss in the last 12 months?

***

9. Has any person applying for coverage discussed or been advised to have treatment, testing, counseling, therapy, or surgery which has not yet been performed?"

The signed application also contained the following clause in bold type:

"I have read all the statements in PART ONE AND TWO, and represent that they are true and complete to the best of my knowledge and belief. I understand that the failure to disclose the information on PARTS ONE AND TWO of this application may be the basis for future claim denial, recission or reformation as of the original effective date, solely at the discretion of the company."

The plaintiffs did not mention Patricia's March 25 visit to the doctor in the insurance application. Additionally, in deposition testimony, Patricia stated that she sought follow-up treatment from Dr. Cyborski within two weeks of her initial visit because her symptoms "changed." At the April 1 visit, Dr. Cyborski diagnosed Patricia with "possible diverticulitis" and recommended that she

see Dr. Soper for a second opinion.

Patricia was examined by Dr. Soper on April 1, 2004. Dr. Soper noted in his records that he believed that Patricia had acute diverticulitis. Dr. Soper noted that Patricia had no insurance, did not wish to be hospitalized or undergo a CAT scan and desired to "try to treat this as conservatively as possible." Dr. Soper prescribed Flagyl and Levaquin for the diverticulitis and instructed Patricia to contact him if the symptoms did not improve in the next 48 hours. Dr. Cyborski noted Dr. Soper's diagnosis in Patricia's medical records and wrote that her CAT scan was on "hold."

The defendant contacted the plaintiffs by telephone to ask some follow-up questions about the medical conditions disclosed in the original application. On April 20, 2004, the plaintiffs completed an amendatory endorsement to the insurance policy. The amendatory endorsement contained the information requested in the telephone call and further requested that the plaintiffs report any illness, injury, or physician consultation since the original application was submitted. The plaintiffs did not include in the amendment any information about Patricia's visits to Dr. Cyborski or Dr. Soper, their diagnoses, or any prescribed medication. The defendant conditionally approved the plaintiffs for coverage effective April 9, 2004. On April 20, 2004, the plaintiffs paid their first premium for two full months of coverage. On April 28, 2004, the defendant began receiving claims for Patricia's medical treatment. On or about May 19, 2004, Patricia was diagnosed with probable peritoneal or ovarian cancer.

The defendant examined the claims and found conditions and circumstances not listed on the application. The defendant then contacted the plaintiffs to obtain a list of their medical providers for the past 10 years. The defendant commenced a contestibility investigation and began examining the

4

plaintiffs' claims. Under specific circumstances, the defendant conducts contestibility investigations within the first 24 months of a policy to determine its liability under the contract. During this investigation, the defendant requested Patricia's medical records from her treating physicians. According to the affidavit of Susan Yeazel, director of members' services for Hallmark Services Corporation (Hallmark), a wholly owned subsidiary of Health Care Service Corporation, the defendant examined the medical records and found discrepancies between the medical records and the application.

After examining the medical records, the defendant decided to rescind the plaintiffs' insurance policy. The defendant concluded that the false answers "substantially increased the chances of the events insured against." Yeazel explained in her affidavit that a policy would not have been issued to the plaintiffs if accurate information had been disclosed in either the original application or the amendatory endorsement. Yeazel further stated that the plaintiffs' application contained material misrepresentations, and in accordance with company policy, the defendant therefore rescinded the insurance policy effective April 9, 2004, and refunded all premiums to the plaintiffs.

On December 14, 2005, the plaintiffs filed their two-count complaint seeking to have the policy reinstated and damages for the defendant's alleged breach of contract. The defendant later filed a motion for summary judgment. As exhibits in support of its motion, the defendant included the original insurance application, the amendatory endorsement, the insurance policy, medical records from Dr. Cyborski and Dr. Soper, the Blue Cross Blue Shield rescission letter, a letter to Patricia Conti, and the affidavit of Susan Yeazel. The defendant argued that there was no genuine issue of material fact regarding whether the statements Patricia made on her application were both false and

material.

The defendant argued that the plaintiffs intentionally falsified their insurance application when they omitted Patricia's March 25, 2004 consultation with Dr. Cyborski and failed to include her subsequent physician visits and diagnosis in the amendatory endorsement. The defendant contended that Patricia's medical records clearly demonstrated that she consulted with a physician on March 25, April 1, and April 8, was diagnosed with probable diverticulitis, and prescribed Protonix and a complete ten-day course of antibiotics. Additionally, the records clearly demonstrated that the plaintiffs knew of Patricia's medical condition, but failed to disclose the material facts. The defendant contended that the plaintiffs' misrepresentations were material and that it would have never issued a policy of insurance if Patricia's medical condition had been disclosed in the original application or amendatory endorsement.

The plaintiffs filed a response and a cross-motion for summary judgment. The plaintiffs argued that they truthfully answered the questions in both the original application and the amendatory endorsement to the best of their knowledge and belief. In support of their motion, the plaintiffs included their own depositions, the original insurance application, the amendatory endorsement, the deposition of Gloria Pfaff, a technical underwriter for Hallmark, the deposition of Susan Yeazel, the deposition of Peter Fischer, manager of benefit services for Hallmark Services Corporation, the risk management committee's evaluation of the plaintiffs' case, and underwriting guidelines for diverticulitis.

In their cross-motion for summary judgment, the plaintiffs argued that the language in the questions was ambiguous and therefore should be construed against the insurer. In her deposition,

Patricia testified that "something was wrong" with her; however, she testified that she did not think her condition qualified as an illness. Donald also testified in his deposition that based on his own definition of consultation, Patricia's doctors visits were not consultations because consultations must be based on a specific illness, and that his wife was not ill during the application process. The plaintiffs also offered the testimony of Susan Yeazel and Gloria Pfaff. Yeazel testified that the defendant did not have a standardized definition of the terms "illness" and "checkup." Pfaff testified that the defendant's underwriting guidelines did not mandate that the plaintiffs' coverage be terminated but, rather, suggested that the plaintiffs pay a higher premium for coverage.

The trial court granted the defendant's motion for summary judgement and concluded that the plaintiffs' answers were materially false as a matter of law. The trial court found that no reasonable person under the facts of this case could construe Patricia's doctors visits to be anything other than a physical examination under the plain and ordinary meanings of the terms "checkup" and "consultation." The court also held that no reasonable person under the facts of this case would believe that a person who had five doctors visits within three weeks for severe abdominal pain was anything other than ill. The trial court relied on Golden Rule Insurance Co. v. Schwartz, 203 Ill. 2d 456, 467, 786 N.E.2d 1010, 1017 (2003), in holding that the plaintiffs' statements were false as a matter of law. Additionally, the court held that the false statements were material, based on the affidavit of Yeazel, in which she stated that the application would have been declined had the insurance company known the true status of Patricia's health.

The plaintiffs have properly appealed pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

ANALYSIS

On appeal, the plaintiffs argue that the insurance application contained ambiguities that precluded summary judgment in favor of the defendant. They contend that the trial court erroneously held that the terminology in the defendant's policy was plain and ordinary and susceptible only to an interpretation against insurance coverage. The plaintiffs claim that they answered the questions to the best of their knowledge and belief. They both believed that Patricia suffered from only a stomachache and was not afflicted with any sickness, disease, disorder, condition, illness or injury. The plaintiffs also argue that at the time they completed the original application, they were not advised of any pending or suggested treatments or tests.

Additionally, the plaintiffs contend that the term "consultation" is ambiguous and susceptible to more than one meaning. The plaintiffs claim that Patricia's subsequent doctors visits (after the initial March 25 visit) were not consultations because they both believed a "consultation" occurs after a patient is informed of his or her illness and then discusses with the treating physician how to treat the ailment. The plaintiffs argue that they honestly believed that Patricia did not consult with a doctor because she was not sick and had only a minor stomachache. The plaintiffs alternatively argue that even if the court finds that the representations were false, the court erred by finding that they were material. The plaintiffs contend that a jury should determine whether they lied on the application and then determine whether the representations were material.

Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, *** show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2002).

8

We review a trial court's order of summary judgment *de novo*. Pekin Insurance Co. v. Adams, 343 Ill. App. 3d 272, 275, 796 N.E.2d 175, 178 (2003).

Section 154 of the Insurance Code states in pertinent part:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company." 215 ILCS 5/154 (West 2002).

If "'[the insurer] [chooses] to include language in its group insurance enrollment form that ha[s] the effect of shifting the focus, in a determination of the truth or falsity of an applicant's statement, from an inquiry into whether the facts asserted were true to whether, on the basis of what he knew, the applicant believed them to be true," "then, the applicant's answer must be assessed in the light of his actual knowledge.'" Golden Rule Insurance Co. v. Schwartz, 203 Ill. 2d 456, 465, 786 N.E.2d 1010, 1016 (2003), quoting Skinner v. Aetna Life & Casualty, 804 F.2d 148, 150 (D.C. Cir. 1986). The determining factor in judging the validity of an applicant's answer is what the applicant in fact believed to be true. Golden Rule Insurance Co., 203 Ill. 2d at 465, 786 N.E.2d at

1016, citing Skinner, 804 F.2d at 150. However, a court may find an applicant's statement false as a matter of law if the statement is clearly contradicted by facts. Golden Rule Insurance Co., 203 Ill. 2d at 465, 786 N.E.2d at 1016, citing Skinner, 804 F.2d at 150.

To establish whether an insurance policy should be voided, the court looks at (1) whether the statement made was false, and (2) if the false statement was made with an intent to deceive or materially affect the acceptance of the risk or hazard assumed by the insurer. Golden Rule Insurance Co., 203 Ill. 2d at 464, 786 N.E.2d at 1015. An insurance company may void a contract for a material misrepresentation if the misrepresentation is "'made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.'" Kohlmeier v. Shelter Insurance Co.,170 Ill. App. 3d 643, 652, 525 N.E.2d 94, 100 (1988), quoting Ill. Rev. Stat. 1983, ch. 73, par. 766. A layperson applying for insurance is not expected to answer questions concerning his past or present health status with the skill of a trained physician. Kohlmeier, 170 Ill. App. 3d at 652, 525 N.E.2d at 101. An insured is not required to disclose information beyond the knowledge of an ordinary person if he has not been informed about his condition by his doctor. Kohlmeier, 170 Ill. App. 3d at 652, 525 N.E.2d at 101.

The terms and conditions of an insurance contract will be enforced as they appear if the language is unambiguous. Golden Rule Insurance Co., 203 Ill. 2d at 465, 786 N.E.2d at 1016. The language of the contract is considered ambiguous if it is susceptible to more than one meaning. American States Insurance Co. v. Koloms, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). Ambiguous language in an insurance contract will be strictly construed against the insurer that drafted the policy. American States Insurance Co., 177 Ill. 2d at 479, 687 N.E.2d at 75.

In this case, the plaintiffs filled out the insurance application and amendatory endorsement for health insurance and omitted information regarding Patricia's stomach ailment, physician visits and any prescribed medication. The trial court found that the statements provided by the plaintiffs were false as a matter of law. The insurance application specifically requested information regarding Patricia's health, frequency of physician visits, pending tests and prescribed medication. The plaintiffs failed to include any information regarding her stomach ailment. Patricia's medical records state that she visited Dr. Cyborski and Dr. Soper multiple times for treatment while her insurance application was still pending approval. The medical records also indicate that Patricia informed Dr. Soper that she had no medical insurance, did not wish to be hospitalized or undergo a CAT scan and requested that he "treat her conservatively." These records clearly contradict the answers submitted by the plaintiffs for question 3(f), 4, 5, and 9, which we have previously cited. The plaintiffs indeed had knowledge of Patricia's illness and need for further medical tests, but failed to include the information in the insurance application.

The plaintiffs argue that the language contained in the insurance contract was ambiguous and should be construed against the defendant. The plaintiffs contend that they did not believe Patricia's doctors visits constituted "consultations" because they did not consider Patricia ill. Patricia visited both Dr. Cyborski and Dr. Soper multiple times while her application was pending approval. During these visits, the medical records show that Patricia was diagnosed with possible diverticulitis, advised to undergo multiple testing, and was prescribed a series of drugs, including antibiotics. Our supreme court has held that an applicant's professed belief in the truthfulness of her answers is not sufficient to enforce the contract if actual knowledge clearly contradicts the belief. Golden Rule Insurance Co.,

11

203 Ill. 2d at 467, 786 N.E.2d at 1016, citing Skinner v. Aetna Life & Casualty, 804 F.2d 148, 151 (D.C. Cir. 1986). We agree with the trial court and find that no reasonable person could construe Patricia's multiple doctors visits to be anything other than a physical examination under the plain and ordinary meanings of the terms "checkup" and "consultation."

We also find that these misrepresentations by the plaintiffs materially affected the acceptance of the risk or hazard assumed by the defendant. Yeazel's affidavit clearly states that the defendant would have denied coverage if Patricia's full medical history had been disclosed in the application. This court held in Garde v. Country Life Insurance Co., 147 Ill. App. 3d 1023, 1032, 498 N.E.2d 302, 309 (1986), that an insurer's employee or underwriter may testify to establish the materiality of a misrepresentation. The court further held that the question of materiality is appropriate for summary judgment if the misrepresentation is of such a nature that all would agree that it is or is not material. Garde, 147 Ill. App. 3d at 1032, 498 N.E.2d at 309. We find that Yeazel's affidavit sufficiently established that the defendant would not have approved the plaintiffs' application if Patricia's medical condition had been fully disclosed.

The trial court properly found that the plaintiffs' statements in their insurance application were false as a matter of law and materially affected the defendant's decision to approve coverage. Accordingly, we affirm the order of the circuit court of Cook County.

Affirmed.

QUINN, P.J., and THEIS, J., concur.