NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0747n.06

No. 11-3417

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jul 11, 2012

LEONARD GREEN, Clerk

THE BELLAS COMPANY, d/b/a Iron City
Distributing, et al.

        Plaintiffs,

v.

PABST BREWING COMPANY,

        Defendant.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    COLE and CLAY, Circuit Judges; MATTICE, District Judge.[*]

**CLAY, Circuit Judge.**  Defendant Pabst Brewing Company appeals an order granting summary judgment in favor of Plaintiffs The Bellas Company, d/b/a Iron City Distributing; Tri-County Wholesale Distributors, Inc.; R.L. Lipton Distributing Company; and Esber Beverage Company.  Because the district court correctly concluded that Defendant breached its franchise agreements with Plaintiffs, we **AFFIRM**.

## BACKGROUND

In this diversity case governed by 28 U.S.C. § 1332, the parties stipulated to the facts relevant to their motions for summary judgment.  Defendant is a Delaware corporation that manufactures and

---

[*] The Honorable Harry S. Mattice, Jr., United States District Judge for the Eastern District of Tennessee, sitting by designation.

sells alcoholic beverages, including the beer brands it supplies to Plaintiffs. Plaintiffs are Ohio corporations in the business of distributing beer supplied by Defendant in four territories across the state. Defendant entered written franchise agreements with The Bellas Company in 2004, with Tri-County Wholesale Distributors and R.L. Lipton Distributing Company in 2004, and with Esber Beverage Company in 2005.

These agreements give rise to two sets of obligations among Defendant and Plaintiffs. First, the franchise agreements created independent contractual obligations. Under the franchise agreements, each Plaintiff has the exclusive right to distribute Defendant's beer brands in its respective territory. The franchise agreements give Defendant the right to terminate "without further obligation and liability of any kind" if one of several triggering events occurs. Agreement with R.L. Lipton Distributing Company § 8, App. Vol. I, p. 49–50. One such event is the creation of any "right to terminate [the] Agreement which exists under applicable state or federal law, statute or regulation." *Id.* § 8.2.10 If Defendant terminates the franchise agreements pursuant to one of the triggering events, Defendant is required to give the distributor at least sixty days prior written notice before terminating the franchise ("the sixty-days' notice provisions"). *Id.* § 8.2. The franchise agreements incorporate Ohio laws and provide that Ohio law supersedes any conflicting provision of the franchise agreements. *Id.* § 16.7.

Second, the franchise agreements are governed by the Ohio Alcoholic Beverage Franchise Act ("OABFA," "the Act"). *See* R.C. 1333.82–1333.87. Defendant is a "manufacturer" under Ohio Revised Code § 1333.82(B), defined as "a person, whether located in this state or elsewhere, that manufactures or supplies alcoholic beverages to distributors" in Ohio. For their part, Plaintiffs fall

2

within the meaning of § 1333.82(C), which defines a "distributor" as "a person that sells or distributes alcoholic beverages to retail permit holders" in Ohio, excluding governmental bodies. As contracts "used to establish a contractual relationship between a manufacturer and a distributor," the franchise agreements created OABFA "franchises." *See* R.C. § 1333.82(D).

The OABFA imposes certain obligations on manufacturers and distributors of alcoholic beverages. For example, the Act requires both manufacturers and distributors to contract and act in good faith. *See* R.C. §§ 1333.83, 1333.86. It prohibits a manufacturer from terminating a franchise unless the manufacturer either, on the one hand, obtains the distributor's consent or, on the other hand, provides just cause for the termination and notifies the distributor of the termination over sixty days in advance.[1] *See* R.C. § 1333.85. However, the Act provides an exception to this prohibition: a "successor manufacturer" may unilaterally terminate a franchise if it acquires most of another manufacturer's stock. *See* R.C. § 1333.85(D).

The "successor manufacturer" provision of the Act became relevant to this dispute when Defendant underwent an ownership change in 2010. On June 25 of that year, S&P Company sold all of Defendant's stock to Pabst Holdings, Inc. ("PHI"), which is a holding company with no assets other than Defendant's stock. Pursuant to the sale, Defendant's three directors resigned and were replaced by new directors. Three top officers were also replaced at the time of the sale, with three

---

[1]Both the franchise agreements and the OABFA independently require a manufacturer to notify a distributor of its intent to terminate a franchise over sixty days in advance of the termination. As we explain below, only the notice provisions from the franchise agreements are relevant to our decision.

other officers departing in the subsequent months. Before and after the sale, Defendant was the business entity that distributed beer to Plaintiffs.

Upon the completion of PHI's purchase of Defendant, Defendant terminated its respective franchises with Plaintiffs. On September 15, 2010, Defendant sent a letter to each Plaintiff notifying them of the termination of the franchise agreements. Defendant claimed that PHI's acquisition made Defendant a successor manufacturer under § 1333.85(D), freeing it from the obligation to provide just cause and sixty days' notice before terminating the franchise agreements. No Plaintiff consented to its respective termination.

Plaintiffs sued Defendant for breach of contract, arguing that Defendant was required to comply with the contractual sixty-days' notice provisions regardless of any effect the OABFA had on the franchise agreements. Plaintiffs also sought a declaration that Defendant is not a successor manufacturer under § 1333.85(D). Defendant counterclaimed, seeking a declaration that it is a successor manufacturer under § 1333.85(D) and was entitled to unilaterally terminate the franchise agreements.

In deciding the parties' cross-motions for summary judgment, the district court found it unnecessary to decide whether Defendant qualified as a successor manufacturer under the OABFA. Instead, the district court assumed that Defendant was a successor manufacturer and concluded that Defendant breached its independent contractual obligations with Plaintiffs by failing to notify them sixty days in advance of terminating the franchise agreements. Defendant argued that the OABFA supplanted the sixty-days' notice provisions, but the district court rejected that argument. Instead, the district court concluded that Defendant remained bound by the provisions after the sale of its

stock from S&P Company to PHI. *See Bellas Company v. Pabst Brewing Company*, No. 2:10-cv-907, 2011 WL 883154 (S.D. Ohio Mar. 11, 2011). In its judgment entry, the district court declared that Defendant breached the franchise agreements and that the franchise agreements remained in effect. Defendant timely appealed.

## DISCUSSION

### I. Standard of Review

We review the district court's decision to grant summary judgment *de novo*. *Wimbush v. Wyeth*, 619 F.3d 632, 636 (6th Cir. 2010). A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits prove "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There exists no genuine issue of fact where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On appeal of a grant or denial of summary judgment, we review mixed questions of law and fact *de novo*. *Barr v. Lafon*, 538 F.3d 554, 562 (6th Cir. 2008). We also review a district court's decision to grant a declaratory judgment *de novo*. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). When we apply state law in a diversity case, we "follow the decisions of the state's highest court when that court has addressed a relevant issue." *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000); *cf. Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### II. Analysis

The only issue we find it necessary to decide is whether Defendant breached the franchise agreements. In order to succeed on breach of contract claim in Ohio, "a plaintiff must prove, by a preponderance of the evidence, 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quoting *Jarupan v. Hanna*, 878 N.E.2d 66, 73 (Ohio Ct. App. 2007)). In Ohio, the interpretation of a contract is a question of law reviewed *de novo*. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

As we explained, the franchise agreements conditioned Defendant's termination on the occurrence of a triggering event, such as a termination right made available by state law, and notifying Plaintiffs sixty days in advance of its intent to termination. Defendant's contention is that state law freed it from fulfilling either condition. Defendant argues that it is a "successor manufacturer" under R.C. § 1333.85(D). More specifically, Defendant argues that an entity it describes as "PBC-S&P" was succeeded by an entity it describes as "PBC-PHI" as the manufacturer in the relevant franchise agreements. Based on its argument that Defendant is a successor manufacturer, Defendant further contends that § 1333.85(D) permitted Defendant to terminate the franchise agreements without cause and by notifying Plaintiffs of the terminations within ninety days of the succession. For purposes of deciding whether Defendant breached the franchise agreements, we accept, without deciding, that Defendant qualified as a successor manufacturer and had the right to unilaterally terminate the franchise agreements.

According to Defendant, its purported status as a successor manufacturer relieved it from complying with the sixty-days' notice provisions. As Defendant's argument runs, these provisions

conflict with the right to unilateral termination conferred by § 1333.85(D). And because both Ohio Revised Code § 1333.83 and § 16.7 of the franchise agreements invalidate any contract provision that conflicts with Ohio law, Defendant argues that it was not required to notify Plaintiffs of its intent to terminate the franchise agreements sixty days in advance of doing so.

Defendant's argument is incorrect. The weak link in its chain of reasoning is the contention that the sixty-days' notice provisions conflict with the OABFA. In fact, they do not. Defendant could have complied with the notice provisions and still exercised its purported termination right by notifying Plaintiffs of its intent to terminate not more than thirty days after "the date of the [PHI's] acquisition" of Defendant. R.C. § 1333.85(D). Far from conflicting with the Act, the sixty-days' notice provisions further its purpose. The Ohio General Assembly adopted the OABFA "to remedy the lack of equal bargaining power between Ohio's alcoholic beverage wholesalers and out-of-state beverage manufacturers." *Esber Beverage Co. v. Wine Group, Inc.*, No. 2011CA00179, 2012 WL 983194, slip op. at *2 (Ohio Ct. App. Mar. 19, 2012) (internal quotation and citation omitted). The sixty-days' notice provisions provide Plaintiffs with greater protection than the OABFA does and, therefore, provide them more bargaining power with manufacturers like Defendant.

In attempting to avoid this conclusion, Defendant insists that compliance with the sixty-days' notice provisions would interfere with what Defendant describes as a successor manufacturer's "unfettered" right to terminate an existing franchise. According to Defendant, the OABFA supersedes the sixty-days' notice provisions. The Act only requires a successor manufacturer to notify a distributor of a termination within ninety days of the acquisition of the preceding manufacturer's assets, and it dispenses with any other requirement. The basis of this argument

7

seems to be the contentions that a regulatory statute like the OABFA supplants private contract provisions related to the subject matter of the regulation and, correspondingly, that two private parties cannot contract into greater protections than those provided by the regulatory statute.

Defendant provides no support for these contentions, probably because it would be impossible to find any. There is obviously no support for the breathtaking proposition that a state law invalidates non-conflicting private contract provisions relating to the subject matter addressed by the state law. And, as a rule, nothing prohibits parties from contracting for greater protections than those provided by statute. *See generally Skinner v. Aetna Life and Cas.*, 804 F.2d 148 (D.C. Cir. 1986); *Clarendon Nat'l Ins. Co. v. Ins. Co. of the West*, 442 F. Supp. 2d 914, 924 (E.D. Cal. 2006); *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1015 (Ill. 2003). The OABFA certainly contains no indication that it prohibits parties from doing so. To the contrary, if the OABFA provided an exhaustive list of the duties of manufacturers and distributors, there would be no need for the Act to require a manufacturer to "contract" with a distributor "a written franchise . . . specifying the rights and duties of both parties." R.C. § 1333.83.

The rights and duties specified by the parties in this case contemplate the very circumstance at issue. The franchise agreements grant Defendant a right of unilateral termination if it gains such a right under state law—such as the termination right that the OABFA gives a successor manufacturer—but, even in the case of such a termination, the franchise agreements require Defendant to give Plaintiffs "at least sixty (60) days prior written notice." Thus, the drafter of the contract—which appears to have been Defendant—assumed that a right to terminate granted by state law would not supersede or invalidate the sixty-days' notice provisions. That assumption was

correct. Defendant failed to satisfy the sixty-days' notice provisions, which means that it breached the franchise agreements, for which the OABFA provides no excuse. In sum, Defendant provides no basis from which we can conclude that the OABFA prohibits the Court from enforcing a plain term in the franchise agreements.

Defendant alternatively contends that it complied with the sixty-days' notice provisions. As Defendant explains, the OABFA provides a schedule according to which a successor manufacturer may terminate a franchise. In the ninety days after the successor manufacturer notifies the distributor of the termination, the parties must negotiate a payment of the diminished value of the distributor's business caused by the termination of the manufacturer's brand. *See* R.C. § 1333.851(B)(2). And if the parties cannot agree on a diminished value, they may seek a judicial determination of the amount of diminished value within the next ninety days. *See* R.C. § 1333.851(B)(3). Only when the parties or a court determines the diminished value must the distributor give the terminated brand back to the successor manufacturer. *See* R.C. § 1333.851(B)(4).

Defendant argues that a successor manufacturer has not terminated a franchise until the distributor returns the terminated brands to the successor manufacturer. Therefore, according to Defendant, the sixty-days' notice provisions should be applied to the end of this statutory termination schedule. Defendant argues that it complied with the contractual sixty-days' notice provisions because it notified Plaintiffs of the terminations more than sixty days before the parties agreed on the diminished value of Plaintiffs' business resulting from the termination.

While Defendant waived this argument by not raising it before the district court, the argument would nevertheless fail if preserved. *See Scottsdale Ins. Co.*, 513 F.3d at 552. Section

9

1333.851(B) refers repeatedly to the successor manufacturer's "notice of termination." For example, the statute requires the distributor to disclose certain financial statements to the manufacturer "within seventy-five days after a distributor receives written notice of termination or nonrenewal of its franchise." R.C. § 1333.851(B)(1). Thus, contrary to Defendant's argument, the OABFA assumes that a successor manufacturer will have already given notice of termination before the parties negotiate the diminished value of the distributor's business. Defendant's application of § 1333.851(B) makes little practical sense—it would hardly benefit a distributor to receive notice of a termination several months into the process by which the successor manufacturer is effecting that termination.

Additionally, the notices Defendant sent to Plaintiffs on September 15, 2010 signaled its intent to bypass the OABFA's termination schedule. The termination letters do not state an intent to serve as a sixty-day notice of termination; to the contrary, they state Defendant's intent to immediately terminate the franchise agreements. In its Answer before the district court, Defendant asserted that the terminations took effect upon the receipt of the notices by Plaintiffs. Defendant cannot now argue that the September 15, 2010 notices constituted attempts to honor the § 1333.851(B) termination schedule. All told, Defendant fails to harmonize § 1333.851(B), the sixty-days' notice provisions, and the September 15, 2010 notices.

## CONCLUSION

In summary, Defendant agreed to notify Plaintiffs at least sixty days in advance of terminating the franchise agreements. The OABFA did not relieve Defendant of this obligation, and

Defendant did not satisfy it. We have no reason to decide whether Defendant is a successor manufacturer under the OABFA. Therefore, we **AFFIRM** the district court's judgment.