In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1607
LORRIE R. MEIER,
 Plaintiff-Appellant,
 v.

PACIFIC LIFE INSURANCE CO.,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Western Division.
 No. 20-C-50096 — Iain D. Johnston, Judge.
 ____________________

 ARGUED FEBRUARY 8, 2023 — DECIDED MARCH 22, 2023
 ____________________

 Before FLAUM, SCUDDER, and ST. EVE, Circuit Judges.
 SCUDDER, Circuit Judge. Lorrie Meier sought to collect on a
life insurance policy from Pacific Life Insurance Company
following the death of her husband Ron. After applying for
insurance—but before Pacific Life issued the policy—Ron
learned he had terminal cancer. Pacific Life denied Lorrie’s
claim for coverage because Ron failed to disclose the cancer
diagnosis before the policy was issued. The district court
agreed with Pacific Life and determined that Ron’s failure to
2 No. 22-1607

inform Pacific Life of the diagnosis constituted a material
misrepresentation allowing for recission of the policy. We
agree and affirm.
 I
 In early 2018 Ron and Lorrie Meier decided to purchase a
life insurance policy for Ron. With the help of a third party,
Monarch Solutions, they began searching for options. While
considering a policy offered by Lincoln Financial Group, a
nurse visited Ron to assess his health and recorded her find-
ings on two forms—one titled the “Medical Supplement” and
another the “Examiner’s Report.” After shopping for other
options with different firms, Ron ultimately applied for a pol-
icy with Pacific Life Insurance Company.
 On June 18, 2018, Pacific Life received a copy of the medi-
cal forms previously submitted to Lincoln Financial. A month
later, on July 26, Ron completed his application for a Pacific
Life policy, referencing the Lincoln Financial “medical exam-
ination” in the application’s “Medical Certification” section.
Ron also agreed to several terms and conditions, including a
provision requiring him to update Pacific Life “in writing of
any changes” to his health. Pacific Life accepted Ron’s appli-
cation on July 30 and began the underwriting process.
 A week later, on August 6, Ron learned he had stage IV
lung cancer and immediately began treatment. Ron and Lor-
rie orally disclosed Ron’s cancer diagnosis to their representa-
tive at Monarch Solutions, but they did not take any steps to
inform Pacific Life. On September 6 Pacific Life delivered the
policy to Ron for his review. Ron received and signed the Pol-
icy Delivery Receipt on September 7, confirming his receipt
and execution of the policy.
No. 22-1607 3

 About a year later Ron died from lung cancer, and Lorrie
filed a claim with Pacific Life. After learning that Ron had
been diagnosed with—but failed to disclose—terminal cancer
before the policy’s issuance date, Pacific Life rejected Lorrie’s
claim. Pursuant to the Illinois Insurance Code, Pacific Life re-
scinded the policy and returned the premiums to Lorrie. She
responded by bringing suit against Pacific Life in federal
court to enforce the policy.
 The district court entered summary judgment for Pacific
Life and affirmed recission of the contract, concluding that
Ron’s failure to disclose his cancer diagnosis amounted to a
material misrepresentation.
 Lorrie now appeals.
 II
 With Lorrie residing in Illinois, both parties agree that Illi-
nois law controls our resolution of the dispute. Section 154 of
the Illinois Insurance Code allows insurers to rescind a policy
when an insured makes a misrepresentation that materially
affects the insurer’s acceptance of risk. See 215 ILCS 5/154. The
statute imposes no intent requirement. “[A] misrepresenta-
tion, even if innocently made, can serve as the basis to void a
policy.” Illinois State Bar Assoc. Mut. Ins. Co. v. Law Off. of Tuz-
zolino & Terpinas, 27 N.E.3d 67, 71 (Ill. 2015) (quoting Golden
Rule Ins. Co. v. Schwartz, 786 N.E.2d 1010, 1015 (Ill. 2003)). All
an insurer must show, then, is a misrepresentation that was
material by the insured. See id.
 A
 The parties first dispute whether Ron’s failure to disclose
his cancer diagnosis amounted to a misrepresentation. Hav-
ing taken our own independent review of the insurance
4 No. 22-1607

policy and application, we agree with the district court that it
was. Ron agreed to inform Pacific Life of any changes to his
health, and no reasonable jury could conclude otherwise.
 Under Illinois law, we interpret an unambiguous insur-
ance contract according to its plain language. River v. Com. Life
Ins. Co., 160 F.3d 1164, 1169 (7th Cir. 1998). The Pacific Life
application that Ron completed in July 2018 contains several
unambiguous terms imposing equally unambiguous obliga-
tions. At the end of the application under the heading “Dec-
larations of All Signing Parties” are two relevant provisions:
 6. I must inform the Producer or [Pacific Life] in
 writing of any changes in the health of any Pro-
 posed Insured(s). If any of the statements or an-
 swers previously provided on the ticket/request
 (if applicable), applications, and medical forms
 change prior to delivery of the policy, I am obli-
 gated to notify [Pacific Life] of the changes in
 writing no later than at the time the application
 is signed by the Proposed Insured(s).
 …
 15. This application will be attached to and
 made part of the policy.
By completing and signing the application, Ron knowingly
and voluntarily agreed to these terms, and Lorrie does not ar-
gue otherwise.
 What immediately catches our eye is the first sentence of
Declaration 6. By its terms, Ron agreed to “inform the Pro-
ducer or [Pacific Life] in writing of any changes in [his]
health.” The language imposed a clear obligation: after Ron
submitted his application, Pacific Life wanted to know of
No. 22-1607 5

changes to his health in case it needed to alter its ongoing as-
sessment of Ron’s risk and corresponding premiums for his
life insurance policy. This makes sound sense—any signifi-
cant changes to Ron’s health would not have been included in
the original application, but they could still bear on Pacific
Life’s underwriting analysis.
 And Ron’s health did change in a substantial way upon
learning he had stage IV lung cancer. The diagnosis came be-
tween the time Ron submitted the application in July 2018 and
Pacific Life’s delivery of the policy two months later in Sep-
tember. Ron did not notify Pacific Life, but the company’s em-
ployees testified that this was exactly the kind of change in
health that it sought to include in its assessment of risk before
issuing a life insurance policy. We see no way around the con-
clusion that Ron’s cancer diagnosis reflected a significant
change in his health that he had to bring to Pacific Life’s at-
tention before the company delivered the policy. Like the dis-
trict court, we conclude that Ron violated the plain terms of
Declaration 6 by failing to inform Pacific Life about his cancer
diagnosis. His omission amounted to a misrepresentation.
 Lorrie urges a different analysis by pointing to the end of
the second sentence in Declaration 6, which qualifies Ron’s
obligation to update Pacific Life about his health as extending
to “the time the application is signed” by Ron. Lorrie insists
that “application” refers narrowly to the document Ron
signed on July 26, 2018, such that any obligation he had ex-
tended only through that date. She explains that because Ron
had not yet been diagnosed with cancer on July 26, his repre-
sentations to Pacific Life up to that date were true and com-
plete. Under Lorrie’s reading, then, Ron had no duty to dis-
close his later cancer diagnosis.
6 No. 22-1607

 We cannot agree. Declaration 6 imposes a precise and un-
mistakable duty on an applicant to report changes in health
until the insurer delivers the policy. Although we
acknowledge that the use of the word “application” here may
have been a poor word choice on Pacific Life’s part, we do not
think that Ron’s obligation to report changes to his health be-
gan and ended with the four corners of the document he filed
on July 26, 2018. Indeed, Declaration 15 informs the applicant
that “[t]his application will be attached to and made part of
the policy.” A reasonable applicant would understand these
words to mean that the application would remain open until
the policy is delivered and executed.
 Lorrie’s contrary reading would render Declaration 6’s
duty to update meaningless. It cannot be the case that the only
time a potential insured must report changes in health is at
the time he first submits the application. To report a change
in health, there must be some baseline giving rise to that
change. But until the insured submits the application, there
has been no baseline showing of health. We are unsure what
would otherwise constitute a change in health that Pacific Life
requires an applicant to report if not those changes occurring
between the time the application is submitted and the policy
is delivered. So it must be the case that, when fairly read,
“changes to health” within the meaning of Declaration 6 in-
clude the type that Ron experienced with his post-application,
pre-delivery cancer diagnosis.
 Our conclusion remains unchanged by the parties’ sepa-
rate debate over whether the Lincoln Financial forms—show-
ing a nurse’s assessment of Ron’s health in May 2018—were
part of Ron’s application to Pacific Life. It does not make a
difference either way. Declaration 6 imposed on Ron an
No. 22-1607 7

independent duty to disclose changes to his health through
the policy’s delivery date regardless of any other representa-
tions he may have made in the application.
 B
 The parties next dispute whether Ron’s omission was ma-
terial. Under Illinois law, we must ask “whether reasonably
careful and intelligent persons would have regarded the facts
stated [or omitted] as substantially increasing the chances of
the events insured against, so as to cause a rejection of the ap-
plication.” American Country Ins. Co. v. Mahoney, 560 N.E.2d
1035, 1042 (Ill. App. Ct. 1990).
 The district court had no trouble finding Ron’s omission
of his cancer diagnosis material. Nor do we. A terminal cancer
diagnosis substantially increases the chances of a person’s
death such that a life insurance company would either reject
that application or, at the very least, reconsider its premiums.
See Lauer v. American Fam. Ins. Co., 769 N.E.2d 924, 928 (Ill.
2002) (holding that a lung cancer diagnosis was material to a
life insurer’s assessment of risk). Indeed, Pacific Life employ-
ees testified as much. In short, Ron’s cancer diagnosis was ma-
terial to the life insurance policy and no reasonable jury could
decide otherwise.
 Lorrie does not dispute that a cancer diagnosis is generally
important to a life insurance company’s assessment of risk.
Rather, she suggests that Pacific Life viewed Ron’s particular
cancer diagnosis as immaterial based on its underwriting
guidelines. But our conclusion in no way turns on the details
of Pacific Life’s underwriting guidelines—Illinois law directs
us to a general standard of reasonableness. See American
Country Ins. Co., 560 N.E.2d at 1042 (imposing a “reasonably
8 No. 22-1607

careful and intelligent person[ ]” standard). Even the plain
terms of Declaration 6 tell us that changes in a potential in-
sured’s health are important to Pacific Life. That Pacific Life
requires applicants to communicate such diagnoses bolsters
our conclusion that the diagnosis was material in this case.
 C
 Lorrie raises three final matters. None changes our view,
however, that Ron’s failure to disclose his cancer diagnosis
constituted a material misrepresentation that entitled Pacific
Life to rescind the contract on that basis.
 Disclosure to an Agent. Lorrie first argues that as a matter
of agency law, Pacific Life had notice of Ron’s cancer
diagnosis and therefore waived its right to rescind the
contract. She contends the Meiers’ oral disclosure of Ron’s
diagnosis to Kevin Klaas—a sales representative at Monarch
Solutions, the third party helping the Meiers purchase the
insurance policy—can be imputed to Pacific Life. But that is
not the case. We agree with the district court that no
reasonable jury would find that Klaas was an agent of Pacific
Life.
 Illinois courts look to four factors to determine whether an
intermediary such as Klaas is an agent or a broker: (1) who
initiated the intermediary’s actions; (2) who controls the in-
termediary’s actions; (3) who pays the intermediary; and (4)
whose interests the intermediary represents. See Royal Macca-
bees Life Ins. Co. v. Malachinski, 161 F. Supp. 2d 847, 851–52
(N.D. Ill. 2001) (citing Roby v. Decatur Steel Erectors, Inc., 375
N.E.2d 1355, 1359 (Ill. App. Ct. 1978)). Determining whether
Klaas was an agent or broker is important because “the
knowledge of an insurance ‘broker’ generally cannot be
No. 22-1607 9

imputed to the insurance company,” whereas the knowledge
of an agent can. Id. at 851.
 Each of these four factors supports Klaas’s status as the
Meiers’ representative rather than an agent of Pacific Life.
Klaas and his firm initiated the Meiers’ search for life insur-
ance policies, and Klaas helped the Meiers shop for several
options, including first at Lincoln Financial and later at Pacific
Life. Klaas did not take direction from Pacific Life beyond
complying with its general forms and requirements, and we
see no evidence Klaas received compensation from Pacific
Life beyond a commission. By its terms, Klaas’s contract with
Pacific Life categorizes him as an “independent contractor”
and expressly disclaims him as a Pacific Life employee. All
told, Klaas represented the interests of the Meiers and not Pa-
cific Life.
 Under these factors, no reasonable jury could find that
Klaas was an agent of Pacific Life. The Meiers’ oral disclosure
to Klaas cannot be imputed to Pacific Life, so Pacific Life can-
not be said to have waived its right to recission.
 Section 155 Vexatious Conduct. Lorrie next contends that Pa-
cific Life’s denial of her claim was vexatious and unreasona-
ble under Section 155 of the Illinois Insurance Code. Illinois
law provides that a bona fide dispute over coverage is a com-
plete defense to a Section 155 claim. Med. Protective Co. v. Kim,
507 F.3d 1076, 1087 (7th Cir. 2007). We see more than a genu-
ine dispute over coverage—we conclude that Pacific Life cor-
rectly denied Lorrie’s claim. So we also conclude that Pacific
Life’s actions were neither vexatious nor unreasonable and
thus reject Lorrie’s Section 155 claim.
10 No. 22-1607

 Validity of Ron’s Signature on the Policy Delivery Receipt. Lor-
rie’s final assertion is that Ron’s signature on the Policy De-
livery Receipt appears forged such that he cannot be bound
to the terms of the insurance policy. The district court saw no
need to wade into this point. Nor do we. As we explained,
Declaration 6 of the application—which Ron undisputedly
signed—directly controls the question of Ron’s material mis-
representation to Pacific Life. Whether Ron did or did not sign
the Policy Delivery Receipt does not alter the terms he agreed
to in his initial application.
 For these reasons we AFFIRM.